1   WALTER RILEY, SBN 95919
2   LAW OFFICE OF WALTER RILEY
    1407 Webster Street, Suite 206
3   Oakland, CA 94612
    Telephone: (510) 451-1422
4   Facsimile: (510) 451-0406
    Email: walterriley@rrrandw.com
5
6   DAN SIEGEL, SBN 56400
    ANNE BUTTERFIELD WEILLS, SBN 139845
7   JANE BRUNNER, SBN 135422
    SONYA Z. MEHTA, SBN 294411
8   EMILYROSE JOHNS, SBN 294319
    ANDREW CHAN KIM, SBN 315331
9   SIEGEL, YEE, BRUNNER  & MEHTA
    475 14th Street, Suite 500
10  Oakland, California 94612
    Telephone: (510) 839-1200
11  Facsimile: (510) 444-6698
    Email: danmsiegel@gmail.com;
12  abweills@gmail.com;
    janebrunner@hotmail.com;
13  sonyamehta@siegelyee.com;
    emilyrose@siegelyee.com;
14  chankim@siegelyee.com

JAMES DOUGLAS BURCH, SBN 293645
National Lawyers Guild
558 Capp Street
San Francisco, CA 94110
Telephone: (415) 285-5067 x.104
Email: james_burch@nlgsf.org

Attorneys for Plaintiffs
ANTI POLICE-TERROR PROJECT,
COMMUNITY READY CORPS,
AKIL RILEY, IAN McDONNELL, NICO
NADA, AZIZE NGO, and JENNIFER LI

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ANTI POLICE-TERROR PROJECT,
COMMUNITY READY CORPS, AKIL
RILEY, IAN McDONNELL, NICO NADA,
AZIZE NGO, and JENNIFER LI, on behalf
of themselves and similarly situated
individuals,

        Plaintiffs,

  vs.

CITY OF OAKLAND, OPD Police Chief
SUSAN E. MANHEIMER, OPD Sergeant
PATRICK GONZALES, OPD Officer
MAXWELL D'ORSO and OPD Officer
CASEY FOUGHT,

        Defendants.

Case No.

**VERIFIED APPLICATION FOR A
TEMPORARY RESTRAINING ORDER
AND CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE AND
DECLARATORY RELIEF**

**Civil Rights**

**DEMAND FOR A JURY TRIAL**

**INTRODUCTION**

1.     Beginning May 29, 2020, following the graphic police murder of George Floyd, who was recorded on video reciting the all too familiar and tragic plea "I can't breathe" while a white police officer kneeled on his neck, Bay Area residents took to the streets of Oakland to protest this injustice and grieve the police murders of other Black and Brown people, including Breonna Taylor, Ahmaud Arbury, and Tony McDade.

2.     Defendant City of Oakland's Police Department ("OPD") used violent crowd control tactics against these peaceful demonstrators. Over the course of several days, OPD deployed constitutionally unlawful crowd control tactics including kettling, indiscriminately launching of tear gas and flashbangs into crowds and at individuals, and shooting projectiles at demonstrators. These demonstrators included many young Black and Brown people.

3.     OPD unjustifiably declared peaceful protests "unlawful assemblies" to excuse their violent tactics.

4.     OPD knowingly placed these demonstrators in physical danger through indiscriminate use of excessive force.

5.     OPD also knowingly created a danger to public health by forcing demonstrators to break social distancing rules that are currently in place due to the COVID-19 pandemic.

6.     OPD targeted journalists and others simply recording its conduct. It targeted medics who were seeking to give aid to those harmed.

7.     OPD's actions, moreover, were in violation of OPD policy and procedures and/or caused by the omission of needed OPD policy and procedures.

8.     OPD did not act alone. It called on its mutual aid network of police departments from other municipalities to further carry out its constitutionally violative tactics.

9.     On June 1, 2020, at around 5 p.m., the Alameda County Sheriff issued a curfew order for the County of Alameda, set to begin at 8 p.m. that evening. The curfew was established while approximately 15,000 students and residents peacefully marched and gathered in Oakland.

10.     OPD falsely claimed demonstrators were inciting violence, throwing Molotov cocktails, assaulting officers, throwing rocks and bottles at officers, and destroying property to

1  justify their use of force and to discourage participation by the public. No evidence exists to

2  support this. The curfew violated peoples' First Amendment rights.

3       11.     Demonstrators who otherwise intended to comply with the curfew were kettled

4  and arrested for being in violation of the curfew.

5       12.     On March 14, 2003, the United States District Court approved a negotiated

6  settlement agreement placing the Oakland Police Department under the Court's supervision

7  until such time as it had implemented a series of specified changes. *Allen v. City of Oakland*,

8  USDC ND Cal. No. 3:00-cv-04599. Those changes were designed in part to prevent the use of

9  excessive force by Oakland officers and to hold them accountable for violating people's rights.

10 More than 17 years later, the Court's supervision continues because Oakland has failed to

11 implement and sustain the required changes.

12      13.     Plaintiffs bring this action to ask the Court to restrain the City of Oakland from

13 further violence and unconstitutional conduct.

14                        **JURISDICTION AND VENUE**

15      14.     This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331

16 (claims arising under the U.S. Constitution) and § 1343(a)(3) claims brought to address

17 deprivations, under color of state authority, of rights, privileges, and immunities secured by the

18 U.S. Constitution), and 42 U.S.C. § 1983.

19      15.     Venue is proper in the United States District Court for the Northern District of

20 California pursuant to 28 U.S.C. § 1391(b)(1) because defendants are located in the Northern

21 District of California and § 1391(b)(2) because all of the acts and/or omissions complained of

22 herein occurred within the Northern District of California.

23                              **PARTIES**

24      16.     Plaintiff Anti Police-Terror Project ("APTP") is a Black-led, multi-racial,

25 intergenerational coalition that seeks to build a replicable and sustainable model to eradicate

26 police terror in communities of color. APTP supports families surviving police terror in their

27 fight for justice, documenting police abuses and connecting impacted families and community

28 members with resources, legal referrals, and opportunities for healing. APTP began as a project

   of the ONYX Organizing Committee. APTP was created following the police killing of Oscar

---

*APTP v. City of Oakland*, Case No.
Verified Application for TRO and and Class Action Complaint- 3

Grant on January 1, 2009, and frequently organizes and leads protests against police misconduct.

17.    The actions of the OPD starting on May 29, 2020, discouraged and continues to discourage members of the Oakland community from participating in lawful protest activities, and chilled and continues to chill the exercise of free speech rights by members and supporters of APTP.

18.    Plaintiff Community Ready Corps ("CRC") is an Oakland-based community organization that combats white supremacy and actively builds and supports Black liberation. CRC frequently organizes and leads protests against police misconduct.

19.    The actions of the Oakland Police Department starting on May 29, 2020, discouraged and continues to discourage members of the Oakland community from participating in lawful protest activities, and chilled and continues to chill the exercise of free speech rights by members and supporters of CRC.

20.    Plaintiff Akil Riley is a resident of Oakland, California.

21.    Plaintiff Ian McDonnell is a resident of Oakland, California.

22.    Plaintiff Nico Nada is a resident of Oakland, California.

23.    Plaintiff Azize Ngo is a resident of Oakland, California.

24.    Plaintiff Jennifer Li is a resident of Oakland, California.

25.    Defendant City of Oakland ("Oakland") is a municipal corporation, duly organized and existing under the laws of the State of California, and is the employer of the individual Oakland defendants, as well as certain, to-be-identified Oakland employees. The City of Oakland operated the OPD under its authority.

26.    At all material times herein, the City of Oakland was responsible for supervising, enacting, and enforcing the OPD's conduct, policies, and practices; the absence of needed policies and practices; and for the hiring, retention, supervision, and training of employees and agents of the OPD, including such employees as defendants Police Chief Susan E. Manheimer ("Manheimer"), Sergeant Patrick Gonzales ("Gonzales"), OPD Officer Maxwell D'Orso ("D'Orso"), OPD Officer Casey Fought ("Fought"), and the to-be-identified OPD employees.

27.     Oakland was also responsible for the actions of the to-be-identified members of their mutual aid network including all assisting officers from Contra Costa County Sheriff's Department, Alameda County Sheriff's Department, San Mateo County Sheriff's Department, San Bruno Police Department, Redwood City Police Department, Menlo Park Police Department and California State University Police Department.

28.     At all material times herein, defendant Chief Manheimer was employed by defendant Oakland as the Interim Chief of Police, and was acting within the course and scope of that employment at such times. She is being sued in her individual and official capacities as the OPD Interim Chief of Police. At all material times, Chief Manheimer was the final policy making official for the OPD, ultimately responsible for all policies, procedures or omission of procedures, supervision, and training of OPD employees.

29.     At all material times herein, defendant Sergeant Gonzales was employed by defendant Oakland as the Sergeant, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacities as the OPD Sergeant. At all material times, Sergeant Gonzales was a supervisor, responsible for enforcing all policies, procedures, supervision, and training of OPD employees.

30.     At all material times herein, defendant Officer D'Orso was employed by defendant Oakland as a Police Officer, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacities as an OPD Officer.

31.      At all material times herein, defendant Officer Fought was employed by defendant Oakland as a Police Officer, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacities as an OPD Officer.

32.     Plaintiffs allege that each of the defendants sued herein was wrongfully, deliberately indifferent, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to plaintiffs.

33.     Plaintiffs allege that each of the defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship.

34.     Plaintiffs are further informed, believe, and thereon allege that each of the defendants herein gave consent, aid, and assistance to each of the remaining defendants, and ratified and/or authorized the acts or omissions of each defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.

35.     At all material times, each defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of plaintiffs' constitutional rights and other actionable harm.

36.     The acts and omissions of all Oakland defendants were at all material times pursuant to the actual customs, policies, practices, and/ or procedures of Oakland and/or the OPD. Stated alternatively, the acts and omissions of all Oakland defendants were at all material times pursuant to the omission of customs, policies, practices, and/or procedures of Oakland and/or the OPD.

37.     At all material times, each defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

**STATEMENT OF FACTS**

38.     On Monday, May 25, 2020, a Minneapolis police officer brutally murdered George Floyd, an unarmed and non-resisting Black man, while other police stood by and watched.

39.     Innumerable people held peaceful protests across the world condemning police brutality and systemic racism in the wake of the state sponsored and/or excused murders of George Floyd, Breonna Taylor, Ahmaud Abrey, Tony McDade, and countless others. Throughout Oakland, protesters honored the men and women killed by local law enforcement: Oscar Grant III, Alan Blueford, Yuvette Henderson, Richard Perkins, Jr., Dujuan Armstrong, Kayla Moore, Jody Mack Woodfox, Jessica Williams, Jesus Delgado Duarte, Jehad Eid, Sahleem Tindle, and countless others.

40.     These constitutionally protected and essential protests occurred and continue amid an unprecedented public health crisis. Novel coronavirus, COVID-19, has killed over 100,000 Americans and continues to spread. The virus is commonly understood to be transmittable through exposure to respiratory droplets. Public health officials advised people to wear masks if they were outside and to stay six feet apart. In an effort to mitigate the number of people infected, the County of Alameda enforced a shelter-in-place order and social distancing protocols.

41.     In anticipation of the protest organized for the evening of May 29, 2020, lawyers on behalf of the National Lawyers Guild, S.F. Bay Area Chapter, emailed Chief Manheimer, Assistant Chief Darren Allison, Deputy Chiefs Leronne Armstrong and Roland Holmgren, Mayor Libby Schaaf, and City Attorney Barbara Parker to remind them of Oakland and the OPD's legal obligation to comply with the OPD Crowd Control Policy and other policies.

**PRE-CURFEW**

42.     At about 8 p.m. on May 29, 2020, demonstrators assembled at Broadway and 14th Street in Oakland to stage a peaceful protest. The demographic of demonstrators included people of all different heritages and ages. Upon information and belief, the youngest person in attendance was ten years old. Many demonstrators were high school students. The demonstrators practiced social distancing by wearing masks. The protest was peaceful. Police presence, however, increased. At all relevant times, no incident occurred justifying OPD to categorize the protest as an unlawful assembly and  to use force against the demonstrators.

43.     At around 9:30 p.m., OPD wrongly declared the protest an unlawful assembly through a loudspeaker. The announcement was inaudible and/or unclear.

44.     Shortly thereafter and without warning, OPD threw a flashbang grenade towards the protestors, hitting Andrea Marina in the leg. The flashbang grenade burned through her jeans, causing her to sustain lacerations and bruising.

45.     OPD then threw teargas canisters and additional flashbang grenades into the crowd, and shot rubber bullets at the demonstrators. OPD also used stun guns and batons against demonstrators.

46.     At around 10:15 p.m., OPD shot tear gas at Michael Cooper and other demonstrators on Clay Street and 14th Street as they were marching and chanting, "Hands up, Don't shoot."

47.     The demonstrators panicked and tried to disperse.

48.     Many demonstrators were forced to remove their masks due to the chemical irritants clinging to the cloth and in the air, making it hard to breathe. Protesters coughed as a result of the chemical irritants, which is a known reaction to their use. As a result, many demonstrators were involuntarily made more vulnerable and susceptible to COVID-19 infections.

49.     OPD targeted journalists. Journalists were detained and struck by projectiles while wearing their press badges.

50.     OPD targeted medics and demonstrators with clearly marked crosses on their bags.

51.     Tear gassed witnesses complained of eye and throat irritation and difficulty breathing.

52.     On or about May 30, 2020, at approximately 10 p.m., Daniel Sanchez was standing at or near the corner of Broadway Street and 14th Street in Oakland. At that time and place a police officer shot him in the eye with a rubber bullet. Upon information and belief the officer was a member of the OPD.

53.     Abner Hougie participated in the protest on the night of May 31, 2020. OPD kettled him along with 200 or so other peaceful demonstrators. He observed OPD firing tear gas and flashbang grenades without provocation or warning.

**POST-CURFEW**

54.     On June 1, 2020, at approximately 4 p.m., a group of young people participated in a peaceful march from Oakland Technical High School to the Oakland Police Administration Building. An estimated 15,000 demonstrators participated, including many young Black and Brown high school students.

55.     At the onset, the organizers announced that the protest was peaceful and explicitly called for "no destruction."

56.     The organizers planned for the protest to end at the Oakland Police Administration Building with a series of speeches. Due to obstruction by OPD, the protest ended short of their final destination and instead concluded at Oscar Grant Plaza.

57.     Nonetheless, a group of demonstrators continued from Oscar Grant Plaza towards the Police Administration Building as planned. At Washington Street and 8th Street, the demonstrators met a line of police outfitted in full riot gear. The OPD kettled the group via line formations and by way of their vehicles, blocking opportunities for egress.

58.     At approximately 5 p.m., demonstrators received notifications through their phones that a curfew order was issued for the County of Alameda beginning at 8 p.m. The notification lacked detail and caused confusion due to the timing and manner of its issuance.

59.     Without warning and before the curfew went into effect, the OPD tear gassed, threw flashbangs, and started shooting rubber bullets at the confined demonstrators.

60.     Many demonstrators were shot in the back as they were fleeing the violent measures employed by police, only to be impeded by police lines kettling them from all directions.

61.     The indiscriminate use of tear gas continued for an hour or so, forcing demonstrators to intermittently remove their masks to breathe and to clean their faces, making them more vulnerable and susceptible to COVID-19 infections.

62.     OPD then arrested demonstrators and applied zip ties to their wrists in lieu of handcuffs. The demonstrators were cited for breaking curfew, including those who otherwise intended to comply but were trapped by OPD.

63.     Natalie Cerullo attended the protest on June 1, 2020, and observed many minors present at the march. She witnessed OPD officers brutalize a man who had his arms up and OPD officers roughly drag a demonstrator who was kneeling. She heard defendant Sergeant Gonzales tell officers to find any reason to cite them.

64.     Erica Hruby attended the protest on June 1, 2020, and observed police fire flashbang grenades and tear gas at peaceful demonstrators. She was later arrested on Broadway

Street between 14th and 15th street and observed that OPD were not wearing masks despite being in close contact with the demonstrators.

65.     Emily Juneau was kettled with a group of protestors on June 1, 2020, at Broadway Street and 8th Street around 7:30 p.m. She did not hear warnings from the OPD. She observed an order given to OPD to disperse the demonstrators even though OPD had blocked all exits from the area. She also heard Sergeant Gonzales tell officers to "find something to cite them with." She did not observe violent demonstrators, Molotov cocktails, or children or elderly people among the group she was with.

66.     Upon information and belief, OPD's Crowd Management and Crowd Control Policy does not authorize  the use of "kettling" as a crowd control tactic. Kettling, which derives from a German military term referring to an army surrounded by a much larger force, is a police tactic whereby officers confine a large group of people to a designated space by surrounding them on all sides so that there is no escape. By doing so, the officers effectively control people's movements.

67.     Kettling leads to the unlawful seizure of people without a reasonable basis, creates panic, elevates tensions, and chills speech. OPD accomplished this by forming police lines and by driving vehicles towards demonstrators.

68.     On both occasions, OPD kettled demonstrators before using dispersing tactics such as tear gassing, flashbanging, and shooting rubber bullets at them.

69.     This tactic denied demonstrators the ability to stay socially distant from each other.

70.     Oakland called on its mutual aid network for crowd control assistance at the protests. On June 3, 2020, at a press conference, Chief Manheimer stated that OPD briefed, instructed, and otherwise controlled the assisting officers, but refused to hold them accountable to Oakland and OPD's policies.

PLAINTIFF ALLEGATIONS

71.     Members and/or supporters of plaintiffs APTP and CRC participated in the protests on May 29, 2020 and June 1, 2020.

72.     Upon information and belief, members and/or supporters of APTP and CRC were injured by the OPD tactics described above, including the use of tear gas, flashbang grenades, and shooting projectiles at protestors. As a result of the police conduct described above, members and supporters of APTP and CRC were discouraged from participating in protests and from exercising their rights to free speech.

73.     Plaintiff Akil Riley is 19 years old, grew up in Oakland, and now attends Howard University. At the May 29, 2020, protest, a flashbang grenade hit him. The police shot teargas and flashbangs indiscriminately into the crowd. OPD were attacking people even as they were trying to comply with OPD. He helped organize the 15,000 person youth-led march on June 1, 2020.

74.     Plaintiff Ian McDonnell participated in the peaceful protests in Oakland beginning on May 29, 2020. At the protests, Oakland Police Department officers shot tear gas, flashbangs, and rubber bullets at him and other demonstrators who were peacefully protesting. He observed others, including journalists, get injured as a result. At the May 29, 2020, protest, McDonnell displayed a cross on his bag, the universal symbol for medical assistance. He subsequently removed it, however, because he witnessed OPD targeting medics and/or demonstrators providing medical care. On June 1, 2020, Officer D'Orso used zip ties to handcuff McDonnell before citing and releasing him for breaking curfew.

75.     Plaintiff Nico Nada participated in the peaceful protests in Oakland beginning on May 29, 2020. At the June 1 protest, OPD tear gassed demonstrators, forcing him and his companions to continue up Broadway towards 14th Street. Officers outfitted in riot gear kettled him and other demonstrators and demanded that they sit. After a police supervisor, name unknown, who was not wearing riot gear, made a gesture, Officer Fought grabbed Nada and put him in a chokehold. Officer Fought pushed Nada to the ground, got on top of him, and put his knee into his back with all his weight before zip tying Nada's hands together over his thumb. Officer Fought then forcibly removed Nada by lifting him and separating him from his companions. Nada complained about the tightness of the zip ties. He was cited and released for

breaking curfew. Nada suffered physical injuries, including bruises and purple fingers, requiring him to seek medical attention.

76.     Plaintiff Azize Ngo participated in the June 1, 2020, youth-led protest beginning at Oakland Technical High School and ending at City Hall. At the end of the protest, Ngo heard a loud bang and saw a man with a bloody ear stating that he had been hit with a rubber bullet. Ngo saw crowds of people who had been tear gassed. They were distraught by what they experienced. OPD officers kettled Ngo and others and tackled kneeling people. Officers stood over Ngo and others whom OPD had forced into lying in a pile on the ground with automatic weapons. OPD officers conducted all this without masks or regard for social distancing.

77.     Plaintiff Jennifer Li sustained injuries including swelling, bruising, soreness, and blisters to her person when OPD threw a flashbang grenade and stinger ball directly into her back as she was walking away from the June 1, 2020, protest. The flashbang exploded on her back, causing her to stumble forward. She also experienced ringing in her ear and suffered a perforation in her left ear drum.

78.     At all material times the actions and omissions of each defendant were intentional, and/or wanton, and/or willful, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to plaintiffs' rights, and/or grossly negligent, and/or negligent.

79.     Plaintiffs suffered unnecessary pain and bruising, trauma, as well as ongoing stress and anxiety, as a result of defendants' tortious, wrongful, and constitutionally violative conduct.

**CLASS ALLEGATIONS**

80.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) on the basis that there is a well-defined community of interest in this litigation, the proposed class is easily ascertainable, and the proposed class is quite numerous.

81.     Plaintiffs seek to represent the following class: All demonstrators who participated and/or intended to participate in the protests beginning on May 29, 2020 in Oakland.

82.     Plaintiffs Akil Riley, Ian McDonnell, Nico Nada seek to represent the following subclass: all demonstrators who inhaled tear gas at the protests in Oakland beginning on May 29, 2020. This subclass will be referred to as the "tear gassed demonstrators".

83.     Plaintiffs Akil Riley, Nico Nada, and Jennifer Li seek to represent the following subclass: all demonstrators who sustained physical injuries from flashbang grenades and/or other projectiles thrown at them at the protests in Oakland beginning on May 29, 2020.  This subclass will be referred to as the "projectile injured demonstrators".

84.     Plaintiffs Ian McDonnell, Nico Nada, Azize Ngo seek to represent the following subclass: all demonstrators arrested and/or cited for a violation of the 8 p.m. curfew in effect on June 1, 2020. This subclass will be referred to as the "cited demonstrators".

85.     Plaintiffs and the putative class were subjected to the constitutional and statutory violations described in this complaint. Upon information and belief, the legal and factual issues are common to the class and affect all class members.

86.     Plaintiffs reserve the right to amend or modify the class and subclass descriptions with greater specificity or further division into subclasses, as well as to limit the class or subclasses to particular issues, as warranted.

**Numerosity**

87.     The potential members of the class and of the subclasses as defined are so numerous that joinder of all of them is impracticable. While the precise number of class members has not been determined at this time, plaintiffs are informed and believe that the class is comprised of more than 1000 individuals. The potential members of each subclass may exceed 100 demonstrators.

**Commonality and Predominance**

88.     There are questions of law and fact that are common to the class and subclasses and predominate over individualized questions. These common questions of law and fact include, without limitation:

a.     Does the use of less-lethal weapons deployed by OPD infringe upon demonstrators' constitutional rights to be free of excessive force, to peaceably assemble, to

freedom of expression, and freedom from viewpoint discrimination under the First
Amendment?

    b.  Has the City of Oakland manifested a failure to adequately train and
supervise its police officers and members of its mutual aid network to properly utilize tear gas,
flashbang grenades, rubber bullets and other non-lethal weapons?

    c.  Are there provisions omitted in the City of Oakland and OPD's crowd
control policy and practices that are necessary to protect demonstrators' constitutional rights?

    d.  Did the City of Oakland knowingly place demonstrators in a danger created
by its affirmative unlawful action?

    e.  Has the City of Oakland exhibited deliberate indifference to the
unconstitutional conduct complained of herein?

    f.  Did the City of Oakland falsely arrest residents for violating curfew?

<b>Typicality</b>

  89.  Named plaintiffs' claims are typical of the claims of putative class members.
Plaintiffs and all members of the putative class sustained injuries and damages arising out of
and caused by defendants' course of conduct, which, as alleged herein, violates federal and
California law.

<b>Adequacy of Representation</b>

  90.  Plaintiffs adequately represent and protect the interests of class and subclass
members. Plaintiffs have no interests that are adverse to the class. Plaintiffs are similarly
situated to other class and subclass members. Counsel who represents plaintiffs are competent
and experienced in litigating civil rights class actions, police misconduct cases, and class actions
generally.

<b>Superiority of Class Action</b>

  91.  A class action is superior to other available means for the fair and efficient
adjudication of this controversy. Individual joinder of all class members is not practicable, and
questions of law and fact common to the class predominate over any questions affecting only
individual members of the class. Each member of the class has been damaged and is entitled to
recovery by reason of the unlawful policies and practices described herein. Class members are

1  unlikely to otherwise obtain effective representation to ensure full enforcement of their rights
2  absent class certification.

3       92.    Class action treatment will allow those similarly situated persons to litigate their
4  claims in the manner that is most efficient and economical for the parties and the judicial
5  system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the
6  management of this action that would preclude its maintenance as a class action.

7       93.    Further, plaintiffs seek a declaratory and injunctive relief, which is a remedy well-
8  suited for class action litigation.

**FIRST CLAIM FOR RELIEF**
**First Amendment Violation**
(By all plaintiffs against all defendants.)
(42 U.S.C. § 1983)

12       94.    Plaintiffs and plaintiff class incorporate by reference paragraphs 1 through 93
13  above as though fully set forth herein.

14       95.    By virtue of the foregoing, defendants violated plaintiffs' rights to freedom of
15  speech, assembly, and association under the First Amendment to the United States
16  Constitution, when acting under color of law, they declared the peaceful protests unlawful
17  assemblies and kettled, tear gassed, flashbanged, and shot projectiles at plaintiffs. At the June 1
18  protest, a curfew order that was not narrowly tailored, and without sufficient notice, was issued
19  to further suppress the plaintiffs' protected First Amendment activities including the right to
20  free speech and assembly.

21       96.    Plaintiffs and plaintiff class suffered harm as a result of the defendants' actions.

**SECOND CLAIM FOR RELIEF**
**Fourth Amendment Excessive Force and Unlawful Seizure**
(By all plaintiffs against all defendants.)
(42 U.S.C. § 1983)

24       97.    Plaintiffs  and plaintiff class incorporate by reference paragraphs 1 through 96
25  above as though fully set forth herein.

26       98.    By virtue of the foregoing, defendants violated plaintiff's rights to be free from
27  excessive force and unlawful seizure when acting under color of law, they kettled, tear gassed,
28  flashbanged, and shot projectiles at plaintiffs.

---

99.     Plaintiffs suffered harm as a result of the defendants' actions.

**THIRD CLAIM FOR RELIEF**
**Fourteenth Amendment Substantive Due Process**
(By all plaintiffs against all defendants.)
(42 U.S.C. § 1983)

100.    Plaintiffs  and plaintiff class incorporate by reference paragraphs 1 through 99 above as though fully set forth herein.

101.    By virtue of the foregoing, defendants violated plaintiffs' rights to substantive due process, when, acting under color of law, they affirmatively and indiscriminately kettled, tear gassed, flashbanged, and shot projectiles at plaintiffs with deliberate indifference to the plaintiffs' personal and physical safety during a pandemic.

102.    Plaintiffs suffered harm as a result of the defendants' actions.

**FOURTH CLAIM FOR RELIEF**
***Monell* and Supervisory Liability**
(By all plaintiffs against defendants City of Oakland and Chief Manheimer.)
(42 U.S.C. § 1983)

103.    Plaintiffs and plaintiff class incorporate by reference paragraphs 1 through 102 above as though fully set forth herein.

104.    Oakland and Chief Manheimer have systematically failed to adequately select, train, and supervise police officers under their control to prevent these officers from interfering with people's First Amendment rights to freedom of speech, assembly, and association and to refrain from punishing people in retaliation for the exercise of these rights.

105.    Oakland and Chief Manheimer have failed to adequately hold officers accountable for such violations of people's rights, thereby condoning and encouraging it.

106.    Oakland and Chief Manheimer have systematically failed to adequately select, train, and supervise police officers under their control to refrain from engaging in excessive force against people exercising their First amendment rights.

107.    Oakland and Chief Manheimer have failed to adequately hold officers accountable for such violations of people's rights, thereby condoning and encouraging it.

108.    The failures of Oakland and Chief Manheimer as set forth herein constitute unconstitutional customs and practices of Oakland.

**DECLARATORY AND INJUNCTIVE RELIEF**

109.    Plaintiffs' only means of securing complete and adequate relief is to also seek declaratory and injunctive relief to provide plaintiffs substantial and complete protection from defendants' unlawful policies and practices. Remedies   at law are inadequate. Plaintiffs therefore seek both legal damages and equitable remedies in the form of declaratory and injunctive relief against defendants.

**DAMAGES**

110.    As a result of the actions of defendants, plaintiffs have been injured and have suffered damages as follows:

      a.    They have had their rights to peaceably assemble and redress their grievances irreparably interfered with;

      b.    They have suffered physical and psychological harm;

      c.    They have incurred expenses for medical care;

      d.    They have lost income; and

      e.    They have incurred property loss.

WHEREFORE, plaintiffs request that this Court grant them relief as follows:

1.    A temporary restraining order barring the City of Oakland from the use of tear gas, rubber bullets, flashbang grenades, and other non-lethal weapons;

2.    A preliminary and permanent injunction barring defendants from engaging in the unconstitutional conduct described herein and imposing appropriate remedial measures to prevent the repetition of such conduct in the future;

3.    Declaratory relief to determine that the acts and policies described herein violated the rights of the plaintiffs and class members;

4.    A determination that this action may proceed as a class action under Fed. R. Civ. P. 23(b) of the Federal Rules of Civil Procedure;

5.    Designation of plaintiffs as class representatives and designation of plaintiffs' counsel as class counsel;

6.    General damages, in an amount to be determined;

7.    Special damages, in an amount to be determined;

8.      Nominal damages;

9.      Reasonable attorneys' fees under 42 U.S.C. § 1988;

10.     Costs of suit; and

11.     Such other and further relief as the Court may deem proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.


Dated:  June 11, 2020

SIEGEL, YEE, BRUNNER & MEHTA

By:   */s/ Dan Siegel*
          Dan Siegel

Attorneys for Plaintiffs
ANTI POLICE-TERROR PROJECT,
COMMUNITY READY CORPS,
AKIL RILEY, IAN McDONNELL, NICO
NADA, AZIZE NGO, and JENNIFER LI

**VERIFICATION**

I, Akil Riley, declare as follows:

I am the plaintiff to this action. I have read the foregoing Verified Complaint and know its contents. The matters stated in the Verified Complaint are true based on my own knowledge, except where stated on information and belief, and as to such matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on June 11, 2020, at Oakland, California.

_____
Akil Riley