WALTER RILEY, SBN 95919
LAW OFFICE OF WALTER RILEY
1407 Webster Street, Suite 206
Oakland, CA 94612
Telephone: (510) 451-1422
Facsimile: (510) 451-0406
Email: walterriley@rrrandw.com

DAN SIEGEL, SBN 56400
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com

Attorneys for Plaintiffs

BARBARA J. PARKER, City Attorney, CABN 069722
DAVID A. PEREDA, Special Counsel, CABN 237982
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-6520, Fax: (510) 238-6500
Email: dpereda@oaklandcityattorney.org

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTI POLICE-TERRO PROJECT, COMMUNITY READY CORPS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, et al.<br><br>Defendants. | Case No. C 20-3866 JCS (LB)<br><br>**STATUS REPORT RE POTENTIAL STIPULATED PRELIMINARY INJUNCTION** |

With the Hon. Laurel Beeler's guidance, the parties have been collaborating towards a potential stipulated preliminary injunction. The parties have not reached full agreement, but they have found some common ground. The following reflects the parties' progress. The parties agree to language that is not highlighted.

## DRAFT STIPULATION

During protests and demonstrations, the following provisions apply:

### Training Bulletin III-G

<u>Plaintiffs</u>

Except as modified in this order, OPD ==and each officer from another agency deployed to assist OPD at demonstrations in Oakland== shall adhere to Training Bulletin III-G, *OPD Crowd Control and Crowd Management* (2013), attached as **Exhibit A.**

<u>The City</u>

Except as modified in this order, OPD shall adhere to Training Bulletin III-G, *OPD Crowd Control and Crowd Management* (2013), attached as **Exhibit A.**

<u>Difference</u>

As captured by the highlight, Plaintiffs' language directs mutual aid officers in addition to OPD officers.

### Badges

<u>Plaintiffs</u>

Each OPD officer ==and each officer from another agency deployed to assist OPD at demonstrations in Oakland== shall wear a badge, nameplate, or other device on the outside of his or her uniform or on his or her helmet which bears the identification number or the name of the officer, as required by Penal Code § 830.10.

<u>The City</u>

Each OPD officer shall wear a badge, nameplate, or other device on the outside of his or her uniform or on his or her helmet which bears the identification

number or the name of the officer, as required by Penal Code § 830.10.

<u>Difference</u>

As captured by the highlight, Plaintiffs' language directs mutual aid officers in addition to OPD officers.

**Body Cameras**

<u>Plaintiffs</u>

Officers shall utilize their Personal Digital Recording Device ("PDRD") in accordance with DGO I-15.1, *Portable Video Management System*.  In addition, officers shall activate their PDRDs whenever taking any enforcement action during a crowd control situation or when ordered to activate their PDRD by a supervisor or commander.  ==All Oakland and other officers deployed to demonstrations in Oakland must have their PDRDs activated and recording at all times while engaged in active policing activities.==

<u>The City</u>

Officers shall utilize their Personal Digital Recording Device ("PDRD") in accordance with DGO I-15.1, *Portable Video Management System*. In addition, officers shall activate their PDRDs whenever taking any enforcement action during a crowd control situation or when ordered to activate their PDRD by a supervisor or commander.

<u>Difference</u>

As captured by the highlight, Plaintiffs' language directs mutual aid officers in addition to OPD officers.

**Police Vehicles and Motorcycles**

Motorcycles and police vehicles may not be used for crowd dispersal but may be used for purposes of observation, visible deterrence, traffic control, transportation, and area control during a crowd event.

**Tactics & Less-Lethal Munitions**

<u>Plaintiffs</u>

City of Oakland, Police Chief Susan Manheimer, *et al.*, officers from other jurisdictions who are assisting Oakland police officers, and all persons acting on their behalf and under their supervision are forbidden from:

    i.   Using tear gas, any other chemical weapon, or aerosol restraints, including handheld OC or pepper spray, against persons taking part in a protest or demonstration. Under no circumstances shall the use of such weapons be used to disperse crowds.

    ii.   Firing flash bang grenades, pepper balls, foam-tip projectiles, or similar weapons at persons taking part in a protest or demonstration. Flash bang grenades, pepper balls, foam-tip projectiles, and similar weapons shall never be used to disperse crowds

    iii.   Using Long Range Acoustical Devices ("LRAD") as a warning signal, to disperse crowds, or as a distraction device.

    iv.   "Kettling" people as a crowd control tactic.

    v.   Utilizing military equipment and combat uniforms in the course of policing demonstrations and protests.

<u>The City</u>

Chemical agents (including orthochlorobenzalmalononitrile), flashbang grenades, and projectiles shall be deployed only when (a) there is an imminent threat of physical harm to a person or destruction of property; and (b) other techniques, such as simultaneous arrests or police formations, have failed or are not reasonably available to address the threat.

None of these devices shall be deployed on peaceful protestors or indiscriminately into a crowd. To the extent reasonably possible, they should be targeted at the specific imminent threat justifying the deployment.

To the extent reasonably possible, before any of these devices are deployed,

==announcements must be made using adequate sound amplification equipment in a manner that will ensure that the announcements are audible over a sufficient area and sufficient time is allowed for people to leave the area through adequate egress routes.==

<u>Difference</u>

On this topic, the parties fundamentally disagree. Plaintiffs maintain that the specified tools should be used during protests or demonstrations under no circumstance. The City maintains that that they should be permitted as set forth in its proposed language.

## Mutual Aid

<u>Plaintiffs</u>

If mutual aid is requested, the OPD Incident Commander shall be responsible for ensuring that mutual aid agencies:

i. Are briefed and in agreement with OPD's Unity of Command structure under which only OPD Commanders may authorize the use of less lethal munitions for crowd control and dispersal;

ii. Are briefed on OPD's policy on prohibited weapons and force;

iii. Do not bring or use any weapons or force that is prohibited under OPD's policy;

iv. Are provided a copy of OPD's Crowd Control Policy and Use of Force policies;

v. Are not assigned to front-line positions or used for crowd intervention, control or dispersal unless there is a public safety emergency;

vi. Complete required reports prior to being released from duty. Agencies should provide the following documents/reports when they are applicable: Use of force report, arrest report, crime report, injury report, equipment damage report and list of responding personnel; and

vii. These provisions do not prohibit an OPD or mutual aid officer from taking

...

...

reasonable action or using reasonable or necessary force as allowed by law against an individual in self-defense or in defense of another person or officer.

    viii.    Mutual aid agencies that violate these provisions shall not be allowed to assist OPD in the future.

Non-Oakland police officers shall not use any demonstration of force or weapon beyond what Oakland authorizes for its own officers. Any non-Oakland officer permitted to or directed to be deployed to demonstrations in Oakland shall be considered an agent of Oakland such that Oakland shall ensure such officer is limiting their use of force to that authorized by Oakland.

OPD personnel shall endeavor to assume front line positions between mutual aid officers and demonstrators.

<u>The City</u>

If mutual aid is requested, the OPD Incident Commander shall be responsible for ensuring to the extent possible that mutual aid agencies:

    i.    Are briefed and in agreement with OPD's Unity of Command structure under which only OPD Commanders may authorize the use of less lethal munitions for crowd control and dispersal;

    ii.    Are briefed on OPD's policy on prohibited weapons and force;

    iii.    Do not bring or use any weapons or force that is prohibited under OPD's policy;

    iv.    Are provided a copy of OPD's Crowd Control Policy and Use of Force policies;

    v.    Are not assigned to front-line positions or used for crowd intervention, control or dispersal unless there is a public safety emergency;

    vi.    Complete required reports prior to being released from duty. Agencies should provide the following documents/reports when they are applicable: Use of force report, arrest report, crime report, injury report, equipment

    damage report and list of responding personnel; and

 vii. These provisions do not prohibit an OPD or mutual aid officer from taking reasonable action or using reasonable or necessary force as allowed by law against an individual in self-defense or in defense of another person or officer.

  OPD personnel shall endeavor to assume front line positions between mutual aid officers and demonstrators.

  <u>Difference</u>

  Key differences are that Plaintiffs' proposed language states that mutual aid officers are "agents" of the City and prevents the City from accepting aid from an agency whose officer does not adhere to OPD's policies.

## Training

  By November 1, 2020, OPD shall conduct a special training session for OPD Incident Commanders, Operations Commanders, and Tango Team members concerning Training Bulletin III-G and this agreement. Plaintiffs' counsel may attend this training session. Further, Plaintiffs' counsel may conduct part of the training subject to scope and time parameters agreed to in advance by the parties.

## Facemasks and Gloves

  <u>Plaintiffs</u>

  During the pendency of the COVID-19 pandemic, ==all Oakland and other officers deployed to demonstrations in Oakland== must wear face masks and gloves whenever they interact with members of the public.

  <u>The City</u>

  During the pendency of the COVID-19 pandemic, ==to the extent reasonably possible, OPD officers== must wear face masks and gloves whenever they interact with members of the public.

  <u>Difference</u>

  The City's language adds "to the extent reasonably possible," and does not

apply to mutual aid officers.

**Cite and Release**

<u>Plaintiffs</u>

All persons arrested during protests in Oakland shall be cited and released in Oakland rather than being taken to the County jail.

<u>The City</u>

Individuals arrested for minor offenses may be cited and released in compliance with Penal Code §853.6 and Department General Order M-7, CITATIONS FOR ADULT MISDEMEANORS, Part III, A-N.

When it is impractical to cite arrestees at or near the site of the demonstration because of a substantial risk that this procedure would allow the unlawful activity to continue or because of specific geographic factors, officers may cite and release arrestees from temporary processing stations or police facilities as near the site of the arrest as possible. While detained during the citation and release process, arrestees shall have reasonable access to toilet facilities and to appropriate medical attention.

No fingerprinting will be done as part of the citation and release process. Arrestees may be instructed to appear for booking prior to or after arraignment.

Commanders shall exercise discretion as to whether property searches are necessary. Property of persons who qualify for citation and release will not be confiscated unless it is found to contain contraband. The intention of this policy is to release citation-eligible arrestees as promptly as possible, and to obviate the need to transfer such arrestees to the Sheriff's custody. Persons for whom a valid warrant is confirmed, or who do not produce valid identification or who are otherwise found ineligible for citation will be transferred to the Sheriff's custody.

An officer seeking to book a misdemeanor arrestee into jail must have an articulable basis to believe that one of the specified statutory exceptions to mandatory cite and release applies to that individual. This basis must be

documented in the police report.

The mere fact that further demonstrations are likely to be held in the near future is not a proper basis to apply subdivision (7) of P.C. 853.6 ("reasonable likelihood that the offense may continue or resume") to individual demonstrators.

There must be an articulable objective basis to believe that, if cited out, those specific individuals would continue the same illegal activity for which they were arrested.

Individuals may not be booked into jail on the sole basis of a felony charge consisting of conspiracy to commit a misdemeanor.

<u>Difference</u>

Plaintiffs' language requires anyone arrested during a protest or demonstrated to be cited and released. The City's language restates the TBIII-G's policy.

**After-Action Report**

<u>Plaintiffs</u>

Subject to protective orders in this case, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, the City shall produce the After-Action Report on the subject protests—occurring from May 29, 2020 through June 1, 2020—within 30 days of the entry of this Order.

<u>The City</u>

Subject to protective orders in this case, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, the City shall produce the *After-Action Report* on the subject protests—occurring from May 29, 2020 through June 1, 2020—to Plaintiffs once completed.

<u>Difference</u>

Plaintiffs' language calls for the City to produce an *After-Action Report* within 30 days. The City's language calls for the report to be produced once completed in accordance with OPD's policies and the timeframes imposed by the Negotiated

Settlement Agreement and the court-appointed team that is currently monitoring and advising on the City's review.

**Enforcement**

Plaintiffs

If Plaintiffs contend that OPD violates Training Bulletin III-G or any of this agreement's provisions at a future protest or demonstration, Plaintiffs may request a hearing to seek relief, including civil and criminal sanctions for contempt and a modification of this agreement.   Unless the parties agree to a different briefing schedule or exigent circumstances convince the Court that immediate relief is necessary, OPD will have seventy-two hours to respond to Plaintiffs' request.

The City

If Plaintiffs contend that OPD violates Training Bulletin III-G or any of this agreement's provisions at a future protest or demonstration, Plaintiffs may request a hearing to seek relief, including a modification of this agreement.   Unless the parties agree to a different briefing schedule, OPD will have seventy-two hours to respond to Plaintiffs' request.

Difference

Plaintiffs' language specifies "civil and criminal sanctions for contempt" as potential relief.

**Duration**

Plaintiffs

This agreement shall remain in effect until dissolved or modified by the Court.

The City

This agreement shall remain in effect through November 30, 2020, unless this date is extended by the Court.

Difference

The City proposes a date certain for the agreement to expire.

Case 3:20-cv-03866-JCS   Document 47   Filed 07/26/20   Page 11 of 11

Dated: July 26, 2020                    Respectfully submitted,

BARBARA J. PARKER, City Attorney
DAVID A. PEREDA, Special Counsel

By:       /s/ David Pereda
    Attorneys for Defendant
    CITY OF OAKLAND

DAN SIEGEL
SIEGEL, YEE, BRUNNER & MEHTA

By:       /s/*Dan Siegel*
    Attorneys for Plaintiffs

*Per Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of the document has been obtained from each of the other Signatories

STATUS REPORT                    11                    C 20-3866 JCS