WALTER RILEY, SBN 95919
LAW OFFICE OF WALTER RILEY
1407 Webster Street, Suite 206
Oakland, CA 94612
Telephone: (510) 451-1422
Facsimile: (510) 451-0406
Email: walterriley@rrrandw.com

DAN SIEGEL, SBN 56400
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com

JAMES DOUGLAS BURCH, SBN 293645
NATIONAL LAWYERS GUILD
558 Capp Street
San Francisco, CA 94110
Telephone: (415) 285-5067 x.104
Email: james_burch@nlgsf.org

Attorneys for Plaintiffs
*Additional counsel on signature page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTI POLICE-TERROR PROJECT, COMMUNITY READY CORPS, SEAN CANADAY, MICHAEL COHEN, MICHAEL COOPER, ANDREA COSTANZO, JOHNATHAN FARMER, LINDSEY FILOWITZ, DANIELLE GAITO, KATIE JOHNSON, BRYANNA KELLY, JENNIFER LI, IAN McDONNELL, MELISSA MIYARA, LINDSEY MORRIS, LEILA MOTTLEY, NIKO NADA, AZIZE NGO, NICOLE PULLER, MARIA RAMIREZ, AKIL RILEY, AARON ROGACHEVSKY, TARA ROSE, ASHWIN RUPAN, DANIEL SANCHEZ, CHRISTINA STEWART, TAYAH STEWART, KATHERINE SUGRUE, CELESTE WONG, and QIAOCHU ZHANG; on behalf of themselves and similarly situated individuals,<br><br>                    Plaintiffs,<br>     vs.<br><br>CITY OF OAKLAND, OPD Police Chief SUSAN E. MANHEIMER, OPD Sergeant PATRICK GONZALES, OPD Officer MAXWELL D'ORSO and OPD Officer CASEY FOUGHT,<br><br>                    Defendants. | Case No. 20-cv-03866-JCS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**Civil Rights**<br><br>**DEMAND FOR A JURY TRIAL** |

**INTRODUCTION**

1.      Beginning May 29, 2020, following the graphic police murder of George Floyd, who was recorded on video reciting the all too familiar and tragic plea "I can't breathe" while a white police officer kneeled on his neck, Bay Area residents took to the streets of Oakland to protest this injustice and grieve the police murders of other Black and Brown people, including Breonna Taylor, Ahmaud Arbury, and Tony McDade.

2.      Defendant City of Oakland's Police Department ("OPD") used violent crowd control tactics against these peaceful demonstrators. Over the course of several days, OPD deployed constitutionally unlawful crowd control tactics including kettling, indiscriminate launching of tear gas and flashbang grenadess into crowds and at individuals, and shooting projectiles at demonstrators. These demonstrators included many young Black and Brown people.

3.      OPD unjustifiably declared peaceful protests "unlawful assemblies" to excuse their violent tactics.

4.      OPD knowingly placed these demonstrators in physical danger through indiscriminate use of excessive force.

5.      OPD also knowingly created a danger to public health by forcing demonstrators to break social distancing rules that are currently in place due to the COVID-19 pandemic.

6.      OPD targeted journalists and others simply recording its conduct. It targeted medics who were seeking to give aid to those harmed.

7.      OPD's actions, moreover, were in violation of OPD policy and procedures and/or caused by the omission of needed OPD policy and procedures.

8.      OPD did not act alone, calling on its mutual aid network of police from other municipalities to further carry out its constitutionally improper tactics.

9.      On June 1, 2020, at around 5 p.m., the Alameda County Sheriff issued a curfew order for the County of Alameda, set to begin at 8 p.m. that evening. The curfew was established while approximately 15,000 students and residents peacefully marched and gathered in Oakland.

10.     OPD falsely claimed demonstrators were inciting violence, throwing Molotov cocktails, assaulting officers, throwing rocks at officers, and destroying property in order to justify police use of force and to discourage participation by the public. The curfew violated people's First Amendment rights.

11.     Demonstrators who otherwise intended to comply with the curfew were kettled and arrested for being in violation of the curfew.

12.     On March 14, 2003, the United States District Court approved a negotiated settlement agreement placing the Oakland Police Department under the Court's supervision until such time as it had implemented a series of specified changes. *Allen v. City of Oakland*, USDC ND Cal. No. 3:00-cv-04599. Those changes were designed in part to prevent the use of excessive force by Oakland officers and to hold them accountable for violating people's rights. More than 17 years later, the Court's supervision continues because Oakland has failed to implement and sustain the required changes.

13.     Plaintiffs bring this action to ask the Court to restrain the City of Oakland from further violence and unconstitutional conduct and for damages.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (claims arising under the U.S. Constitution) and § 1343(a)(3) claims brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the U.S. Constitution), and 42 U.S.C. § 1983.

15.     The state law claims here are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

16.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) because defendants are located in the Northern District of California and § 1391(b)(2) because all of the acts and/or omissions complained of herein occurred within the Northern District of California.

**PARTIES**

17.     Plaintiff Anti Police-Terror Project ("APTP") is a Black-led, multi-racial, intergenerational coalition that seeks to build a replicable and sustainable model to eradicate police terror in communities of color. APTP supports families surviving police terror in their fight for justice, documenting police abuses and connecting impacted families and community members with resources, legal referrals, and opportunities for healing. APTP began as a project of the ONYX Organizing Committee. APTP was created following the police killing of Oscar Grant on January 1, 2009, and frequently organizes and leads protests against police misconduct.

18.     Plaintiff Community Ready Corps ("CRC") is an Oakland-based community organization that combats white supremacy and actively builds and supports Black liberation. CRC frequently organizes and leads protests against police misconduct.

19.     Plaintiff Sean Canaday is a resident of Berkeley, California.

20.     Plaintiff Michael Cohen is a resident of Berkeley, California.

21.     Plaintiff Michael Cooper is a resident of Berkeley, California.

22.     Plaintiff Andrea Marina Costanzo is a resident of Oakland, California.

23.     Plaintiff Johnathan Farmer is a resident of Oakland, California.

24.     Plaintiff Lindsey Filowitz is a resident of Oakland, California.

25.     Plaintiff Danielle Gaito is a resident of San Rafael, California.

26.     Plaintiff Katie Johnson is a resident of Oakland, California.

27.     Plaintiff Bryanna Kelly was a resident of Hayward, California, at all relevant times.

28.     Plaintiff Jennifer Li is a resident of Oakland, California.

29.     Plaintiff Ian McDonnell is a resident of Oakland, California.

30.     Plaintiff Melissa Miyara is a resident of Oakland, California.

31.     Plaintiff Lindsey Morris is a resident of Oakland, California.

32.     Plaintiff Leila Mottley is a resident of Oakland, California.

1     33.     Plaintiff Niko Nada is a resident of Oakland, California.

2     34.     Plaintiff Nicole Puller is a resident of Oakland, California.

3     35.     Plaintiff Azize Ngo is a resident of Oakland, California.

4     36.     Plaintiff Maria Ramirez is a resident of Oakland, California.

5     37.     Plaintiff Akil Riley is a resident of Oakland, California.

6     38.     Plaintiff Aaron Rogachevsky is a resident of Oakland, California.

7     39.     Plaintiff Tara Rose is a resident of Richmond, California.

8     40.     Plaintiff Ashwin James Rupan is a resident of Hayward, California.

9     41.     Plaintiff Daniel Sanchez is a resident of Oakland, California.

10     42.     Plaintiff Christina Stewart is a resident of Sacramento, California.

11     43.     Plaintiff Tayah Stewart is a resident of Sacramento, California.

12     44.     Plaintiff Katherine Sugrue is a resident of Oakland, California.

13     45.     Plaintiff Celeste Wong is a resident of Oakland, California.

14     46.     Plaintiff Qiaochu Zhang is a resident of Oakland, California.

15     47.     Defendant City of Oakland ("Oakland") is a municipal corporation, duly
16 organized and existing under the laws of the State of California, and is the employer of the
17 individual Oakland defendants, as well as other to be identified Oakland employees. The City
18 of Oakland operates the OPD under its authority.

19     48.     At all material times herein, the City of Oakland was responsible for supervising,
20 enacting, and enforcing the OPD's conduct, policies, and practices; the absence of needed
21 policies and practices; and for the hiring, retention, supervision, and training of employees and
22 agents of the OPD, including such employees as defendants Police Chief Susan E. Manheimer
23 ("Manheimer"), Sergeant Patrick Gonzales ("Gonzales"), OPD Officer Maxwell D'Orso
24 ("D'Orso"), OPD Officer Casey Fought ("Fought"), and to be identified OPD employees.

25     49.     Oakland was also responsible for the actions of the members of their mutual aid
26 network including all assisting officers from Contra Costa County Sheriff's Department,
27 Alameda County Sheriff's Department, San Mateo County Sheriff's Department, San Bruno
28 Police Department, Redwood City Police Department, Menlo Park Police Department and

California State University Police Department.

50.    At all material times herein, defendant Chief Manheimer was employed by defendant Oakland as the Interim Chief of Police, and was acting within the course and scope of that employment at such times. She is being sued in her individual and official capacities as the OPD Interim Chief of Police. At all material times, Chief Manheimer was the final policy making official for the OPD, ultimately responsible for all policies, procedures or omission of procedures, supervision, and training of OPD employees.

51.    At all material times herein, defendant Sergeant Gonzales was employed by defendant Oakland as a Police Sergeant, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacities as an OPD Sergeant. At all material times, Sergeant Gonzales was a supervisor, responsible for enforcing all policies, procedures, supervision, and training of OPD employees.

52.    At all material times herein, defendant Officer D'Orso was employed by defendant Oakland as a Police Officer, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacities as an OPD Officer.

53.    At all material times herein, defendant Officer Fought was employed by defendant Oakland as a Police Officer, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacities as an OPD Officer.

54.    Plaintiffs allege that each of the defendants sued herein was wrongfully, deliberately indifferent, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to plaintiffs.

55.    Plaintiffs allege that each of the defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship.

56.     Plaintiffs are further informed, believe, and thereon allege that each of the defendants herein gave consent, aid, and assistance to each of the remaining defendants, and ratified and/or authorized the acts or omissions of each defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.

57.     At all material times, each defendant was an integral participant, jointly and fundamentally engaged in constitutionally improper, unlawful, and/or tortious activity, resulting in the deprivation of plaintiffs' constitutional rights and other actionable harm.

58.     The acts and omissions of all Oakland defendants were at all material times pursuant to the actual customs, policies, practices, and/ or procedures of Oakland and/or the OPD. Stated alternatively, the acts and omissions of all Oakland defendants were at all material times pursuant to the omission of customs, policies, practices, and/or procedures of Oakland and/or the OPD.

59.     At all material times, each defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

**STATEMENT OF FACTS**

60.     On Monday, May 25, 2020, a Minneapolis police officer brutally murdered George Floyd, an unarmed and non-resisting Black man, while other police officers stood by and watched.

61.     Innumerable people held peaceful protests across the world condemning police brutality and systemic racism in the wake of the state sponsored and/or excused murders of George Floyd, Breonna Taylor, Ahmaud Abrey, Tony McDade, and countless others. Throughout Oakland, protesters honored the men and women killed by local law enforcement: Oscar Grant III, Alan Blueford, Yuvette Henderson, Richard Perkins, Jr., Dujuan Armstrong, Kayla Moore, Jody Mack Woodfox, Jessica Williams, Jesus Delgado Duarte, Jehad Eid, Sahleem Tindle, and countless others.

62.     These constitutionally protected and essential protests occurred and continue amid an unprecedented public health crisis. Novel coronavirus, COVID-19, has killed over 200,000 Americans and continues to spread. The virus is commonly understood to be

transmittable through exposure to respiratory droplets. Public health officials advised people to wear masks if they were outside and to stay six feet apart. In an effort to mitigate the number of people infected, the County of Alameda enforced a shelter-in-place order and social distancing protocols.

63.     In anticipation of the protest organized for the evening of May 29, 2020, lawyers on behalf of the National Lawyers Guild, S.F. Bay Area Chapter, emailed Chief Manheimer, Assistant Chief Darren Allison, Deputy Chiefs Leronne Armstrong and Roland Holmgren, Mayor Libby Schaaf, and City Attorney Barbara Parker to remind them of Oakland and the OPD's legal obligation to comply with the OPD Crowd Control Policy and other policies.

64.     At about 8 p.m. on May 29, 2020, demonstrators assembled at Broadway and 14th Street in Oakland to stage a peaceful protest. The demographic of demonstrators included people of all different heritages and ages. Upon information and belief, the youngest person in attendance was ten years old. Many demonstrators were high school students. The demonstrators practiced social distancing by wearing masks. The protest was peaceful. Police presence, however, increased.

65.     At all relevant times, no incident occurred justifying OPD to characterize the protests as an unlawful assembly or to use force against the demonstrators.

66.     At around 9:30 p.m., through a loudspeaker, OPD wrongly declared the protest an unlawful assembly. The announcement was inaudible and/or unclear.

67.     OPD then threw teargas canisters and additional flashbang grenades into the crowd, and shot rubber bullets at the demonstrators. OPD also used stun guns and batons against demonstrators, who tried to disperse.

68.     Many demonstrators were forced to remove their masks due to the chemical irritants clinging to the cloth and in the air, making it hard to breathe. Protesters coughed as a result of the chemical irritants, which is a known reaction to their use. As a result, many demonstrators were involuntarily made more vulnerable and susceptible to COVID-19 infections.

69.     OPD targeted journalists. Journalists were detained and struck by projectiles

1   while wearing their press badges.

2        70.    OPD targeted medics and demonstrators with clearly marked crosses on their

3   bags.

4        71.    Tear gassed witnesses complained of eye and throat irritation and difficulty

5   breathing.

6        72.    On May 30, 2020, police shot Daniel Sanchez in the eye with a rubber bullet at

7   close range.

8        73.    Johnathan Farmer attended the protest on May 30, 2020. Police shot him in the

9   leg with a projectile and fired tear gas into the crowd. His leg was sore, cut, and badly bruised,

10   and he was limping for about a week.

11        74.    Abner Hougie participated in the protest on the night of May 31, 2020. OPD

12   kettled him along with 200 or so other peaceful demonstrators. He observed OPD firing tear

13   gas and flashbang grenades without provocation or warning.

14        75.    On June 1, 2020, starting at approximately 4 p.m., a group of young people

15   participated in a peaceful march from Oakland Technical High School to the Oakland Police

16   Administration Building. An estimated 15,000 demonstrators participated, including many

17   young Black and Brown high school students.

18        76.    At the onset, the organizers announced that the protest was peaceful and

19   explicitly called for "no destruction."

20        77.    The organizers planned for the protest to end at the Oakland Police

21   Administration Building with speeches. Due to obstruction by OPD, the protest ended short of

22   the final destination and instead concluded at Oscar Grant Plaza.

23        78.    Nonetheless, a group of demonstrators continued from Oscar Grant Plaza

24   towards the Police Administration Building. At Washington Street and 8th Street, the

25   demonstrators met a line of police outfitted in full riot gear. The OPD kettled the group via line

26   formations and by way of their vehicles, blocking opportunities for egress.

27        79.    At approximately 5 p.m., after the march had already started, the County of

28   Alameda and the City of Oakland began disseminating the message that a curfew would begin

1  just three hours later.

2      80.    Also, on June 1, 2020, the City of Oakland declared a local emergency and issued

3  a curfew, effective Monday, June 1, 2020, from 8 p.m. to 5 a.m.

4      81.    Without warning and before the curfew went into effect, the OPD tear gassed,

5  threw flashbangs, and started shooting rubber bullets at the confined demonstrators.

6      82.    Many demonstrators were shot in the back as they were fleeing the violent

7  measures employed by police, only to be impeded by police lines kettling them from all

8  directions.

9      83.    The indiscriminate use of tear gas continued for an hour or so, forcing

10 demonstrators to intermittently remove their masks to breathe and to clean their faces,

11 making them more vulnerable and susceptible to COVID-19 infections.

12     84.    OPD then arrested demonstrators and applied zip ties to their wrists in lieu of

13 handcuffs. The demonstrators were cited for breaking curfew, including those who otherwise

14 intended to comply but were trapped by OPD.

15     85.    Danielle Gaito attended the protest on June 1, 2020, and observed many minors

16 present at the march. She witnessed OPD officers brutalize a man who had his arms up and

17 OPD officers roughly drag a demonstrator who was kneeling. She heard defendant Sergeant

18 Gonzales tell officers to find any reason to cite them.

19     86.    Erica Hruby attended the protest on June 1, 2020, and observed police fire

20 flashbang grenades and tear gas at peaceful demonstrators. She was later arrested on

21 Broadway Street between 14th Street and 15th Street and observed that OPD were not wearing

22 masks despite being in close contact with the demonstrators.

23     87.    Emily Juneau was kettled with a group of protestors on June 1, 2020, at

24 Broadway Street and 8th Street at around 7:30 p.m. She did not hear warnings from the OPD.

25 She observed an order given to OPD to disperse the demonstrators even though OPD had

26 blocked all exits from the area. She also heard Sergeant Gonzales tell officers to "find

27 something to cite them with." She did not observe violent demonstrators, or Molotov

28 cocktails.

*APTP v. City of Oakland*, No. 20-cv-03866-JCS
First Amended Class Action Complaint- 10

88.     Upon information and belief, OPD's Crowd Management and Crowd Control Policy does not authorize the use of "kettling" as a crowd control tactic. Kettling, which derives from a German military term referring to an army surrounded by a much larger force, is a police tactic whereby officers confine a large group of people to a designated space by surrounding them on all sides so that there is no escape. By doing so, the officers effectively control people's movements.

89.     Kettling leads to the unlawful seizure of people without a reasonable basis, creates panic, elevates tensions, and chills speech. OPD accomplished this by forming police lines and by driving vehicles towards demonstrators.

90.     OPD used tear gas and kettled demonstrators. After demonstrators were kettled, OPD used additional tear gas,  flashbang grenades, and projectiles against the demonstrators, who, at that point, were unable to escape the kettle.. This tactic denied demonstrators the ability to stay socially distant from one another and trapped depmsointrators in a cloud of tear gas .

91.     Oakland called on its mutual aid network for crowd control assistance at the protests. On June 3, 2020, at a press conference, Chief Manheimer stated that OPD briefed, instructed, and otherwise controlled the assisting officers, but refused to hold them accountable to Oakland and OPD's policies.

**PLAINTIFFS' ALLEGATIONS**

92.     Members and/or supporters of plaintiffs APTP and CRC participated in the protests on May 29, 2020 and June 1, 2020.

93.     Members and/or supporters of APTP and CRC were injured by the OPD tactics described above, including the use of tear gas, flashbang grenades, and shooting projectiles at protestors. As a result of the police conduct described above, members and supporters of APTP and CRC were discouraged from participating in protests and from exercising their rights to free speech.

94.     Plaintiff Akil Riley is 19-years-old, grew up in Oakland, and now attends Howard University. At the May 29, 2020, protest, he was hit with a  flashbang grenade. He saw the

police shoot teargas and flashbang grenades indiscriminately into the crowd. OPD officers were attacking people even as they were trying to comply with OPD's instructions. Mr. Riley helped organize the 15,000 person youth-led march on June 1, 2020.

95.     On May 29, 2020, police shot a flashbang grenade, hitting plaintiff Andrea Marina Costanzo in the leg. It burned through her jeans, causing her lacerations and bruising. She has permanent scarring as a result.

96.     On May 29, 2020, the police teargassed plaintiff Tara Rose and hit her between the legs with a projectile. It burned both her legs causing second degree burns.

97.     Plaintiff Katherine Sugrue attended the May 29, 2020, protest. The police were launching tear gas directly at people. A tear gas canister went off right underneath her, and she felt like she was going to die. She had eye irritation and breathing problems so severe that she had to go to the hospital.

98.     On May 29, 2020, plaintiff Katie Johnson was at the protest where she saw police throwing numerous tear gas canisters and bean bag projectiles directly at people. She was hit in the ankle, thigh, and chest, and shrapnel hit her elbow. She was hit in the mouth by a tear gas canister.

99.     On May 29, 2020, plaintiff Melissa Myara attended a peaceful protest. The police tear gassed her and set off flashbang grenades near her. Ms. Myara has asthma and was terrified because she could not breathe and because of the flashbang grenades. She felt that the police turned the peaceful protest into a warzone.

100.    On May 29, 2020, plaintiff Nicole Puller was tear gassed at the protest. A dense fog of gas surrounded her. People around her began coughing and took off their masks. Ms. Puller ran from the coughing people because she did not want to be exposed to COVID-19. Her lungs and eyes burned and hurt.

101.    Plaintiff Lindsey Morris attended this May 29, 2020, protest. Between 9:30 p.m. and 10 p.m., she saw police throw tear gas and smoke bombs into the large crowd. People stampeded to get away from the gas. Ms. Morris was  was knocked over and suffered a broken ankle. She was in the worst pain of her life and needed surgery for the injury.

102.    At around 10:15 p.m. on May 29, 2020, OPD shot tear gas at plaintiff Michael Cooper and other demonstrators on Clay Street and 14th Street as they were marching and chanting, "Hands up, Don't shoot." Cooper had attended as a journalist. He repeatedly asked police where they were directing media, or where the press line was drawn, and they refused to answer him. As a result, he remained with the crowd. When police fired tear gas in the crowd, he was gassed, and he developed blisters on his face and skin. He saw clouds of tear gas.

103.    Plaintiff Maria Gisella Ramirez was at the May 29, 2020, protest. She saw police shoot teargas and flashbang grenades into the crowd. She ran with a group of people trying to get away. The police corralled the group into a parking lot where they shot numerous canisters and tear gas into the group, causing a stampede. She was able to walk away and went to the corner of 27th Street and Broadway. The police arrived and threw a flashbang grenade in the air. It hit her forehead and cut her.

104.    On the evening of May 29, 2020, plaintiff Ashwin James Rupan was near Webster Street between 30th Street and Hawthorn Street with a crowd of demonstrators. Police kettled the group and shot teargas and flashbang grenades into the crowd, which caused a stampede. The area was covered in smoke. He ran with the crowd, was pushed, and fell into a deep ditch of about ten feet. He was stuck in the ditch and could not walk. No-one could find him. He suffered a broken ankle.

105.    Plaintiff Ian McDonnell participated in the peaceful protests in Oakland beginning on May 29, 2020. At the protests, Oakland Police Department officers shot tear gas, flashbang grenades, and rubber bullets at him and other demonstrators who were peacefully protesting. He observed others, including journalists, get injured as a result. At the May 29, 2020, protest, McDonnell displayed a cross on his bag, the universal symbol for medical assistance. He subsequently removed it, however, because he witnessed OPD targeting medics and/or demonstrators providing medical care. On June 1, 2020, Officer D'Orso atrrested Mr. McDonnell. He used zip ties to handcuff Mr. McDonnell before citing and releasing him for breaking curfew.

106.    On or about May 30, 2020, at approximately 10 p.m., plaintiff Daniel Sanchez

was standing at or near the corner of Broadway Street and 14th Street in Oakland. He was simply watching the protests when a police officer shot him in the eye with a rubber bullet at close range. Upon information and belief, the officer was a member of the OPD. He required eye surgery.

107. Plaintiff Johnathan Farmer attended the protest on May 30, 2020. Police shot him in the leg with a projectile and fired tear gas into the crowd. His leg was sore, cut, and badly bruised, and he was limping for about a week.

108. Plaintiff Niko Nada participated in the peaceful protests in Oakland beginning on May 29, 2020. At the June 1 protest, OPD tear gassed demonstrators, forcing him and his companions to continue up Broadway towards 14th Street. Officers outfitted in riot gear kettled him and other demonstrators and demanded that they sit. After a police supervisor, name unknown, who was not wearing riot gear, made a gesture, Officer Fought grabbed Mx. Nada and put him in a chokehold. Officer Fought pushed Mx. Nada to the ground, got on top of him, and put his knee into his back with all his weight before zip tying Nada's hands together over his thumb. Officer Fought then forcibly removed Mx. Nada by lifting him and separating him from his companions. Mx. Nada complained about the tightness of the zip ties. He was cited and released for breaking curfew. Mx. Nada suffered physical injuries, including bruises and purple fingers, requiring him to seek medical attention.

109. Plaintiff Azize Ngo participated in the June 1, 2020, youth-led protest beginning at Oakland Technical High School and ending at City Hall. At the end of the protest, Mx. Ngo heard a loud bang and saw a man with a bloody ear stating that he had been hit with a rubber bullet. Mx. Ngo saw crowds of people who had been tear gassed. They were distraught by what they experienced. OPD officers kettled Mx. Ngo and others and tackled kneeling people. Officers with automatic weapons stood over Mx. Ngo and others whom OPD had forced into lying in a pile on the ground. OPD officers acted without masks or regard for social distancing.

110. Plaintiff Jennifer Li sustained injuries including swelling, bruising, soreness, and blisters to her person when OPD threw a flashbang grenade and stinger ball directly into her back as she was walking away from the June 1, 2020, protest. The flashbang grenade exploded

on her back, causing her to stumble forward. She also experienced ringing in her ear and suffered a perforation in her left ear drum.

111.    On June 1, 2020, plaintiff Maria Gisella Ramirez was first tear gassed at around 7:30 p.m. She saw a wall of gas. The gas burned her skin and made her face mask stick to her skin. She is a high school teacher and remained at the demonstration to ensure that the high school students who were present were cared for and could make it home safely. At around 8 p.m., some armored trucks and SUVs drove up. The police ran towards her and others as she was trying to leave the area to go to a wellness center nearby. She was cited and detained for about an hour with extremely tight zipties that injured her.

112.    Plaintiff Sean Canaday attended the protest on June 1, 2020, where police shot him in the ear with a projectile. A tear gas canister hit him in the heel. There was intense tear gas. He went to the emergency room that night for stitches. He suffered a concussion as a result.

113.    Plaintiff Michael Cohen attended the protest with his daughter on June 1, 2020. A flashbang grenade detonated very close to him, resulting in a headache and ringing in his ears for 24 hours. Projectiles hit his right thigh and backside, which was bruised for one month. He experienced eye irritation, cough, and choking due to the tear gas.

114.    Plaintiff Lindsey Filowitz was walking outside on June 1, 2020, to get some relief from quarantine. She saw a peaceful protest and decided to stay. Suddenly, she heard loud sounds and then saw tear gas canisters flying into the crowd. She ran but because she had inhaled the gas, she could not breathe and had to stop. She became very sick with chest pains, coughing, and diarrhea, and was mostly bedridden for two weeks. She attempted to attend another protest on June 3, 2020, but was too gripped by anxiety to stay.

115.    Plaintiff Danielle Gaito attended the peaceful youth protest on June 1, 2020. She saw that police were not wearing masks and she was concerned about COVID-19. The police started throwing flashbang grenades and then tear gas. At about 7:40 p.m., after police used force against the crowd, the police announced that the gathering was an unlawful assembly and declared that there was a curfew. A police officer threw a flashbang grenade at her arm.

She saw Officer Patrick Gonzales grab a Latinx woman by the arm. She saw another officer grab a Black man who was on his knees and push him into the ground. While the police were arresting her, she kept asking them to wear masks, which they did not do.

116.    Plaintiff Bryanna Kelly attended the June 1, 2020, protest. Around 7:40 p.m., the police began throwing tear gas and projectiles. The crowd panicked. Ms. Kelly ran to get away and was hit in her left knee with a flashbang grenade. She thought they had blown out her knee. She was in pain and limping for weeks. The anxiety and grief from that day has stopped her from attending further protests.

117.    Plaintiff Leila Mottley was tear gassed by OPD on  on June 1, 2020. She was 17-years-old at the time. She heard the police issue a muffled announcement, and then flashbang grenades and tear gas erupted around her. Her skin and lungs have been irritated since then. She had to run through the gas to avoid getting hit by flashbang grenades. She was terrified.

118.    Plaintiff Nicole Puller was tear gassed on June 1, 2020. She saw people around her bleeding and heard yells of "I'm shot!" The police arrested her for violating curfew although she was trying to leave. She was handcuffed for two and a half hours. An officer asked her if the cuffs were too tight, and she said yes, but he took no action. The police were not wearing masks.

119.    Plaintiff Aaron Rogachevsky joined the June 1, 2020, protest. He was in the crowd when the police tear gassed the crowd. He had difficulty breathing for at least a day, and a cough and runny nose for a week.

120.    Plaintiff Christina Stewart is a nurse who lives in Sacramento and works in Oakland. She is on the frontlines fighting COVID-19. On June 1, 2020, she was staying at the Marriott on 11th and Broadway. She decided to attend the protest with her teenage daughter. She joined the protest with her daughter at 7:14 p.m. when the march passed by her hotel, headed to 8th and Broadway. At around 7:42 p.m, she heard a "pop, pop, pop" and teargas canisters landed feet away from her. She and her daughter tried to leave. The teargas made them disoriented and sick. They went home as soon as they could. Ms. Stewart is wary of attending another protest.

121.    Plaintiff Tayah Stewart, Ms. Stewart's daughter, was at the peaceful protest with her mother. She was tear gassed for no reason with no warning. After that, she stopped attending protests in any city.

122.    Plaintiff Katherine Sugrue attended the June 1, 2020, protest. She saw police put on helmets and pull out flashbang grenades. The police were pointing people out and throwing flashbang grenades and tear gas canisters. They were also shooting rubber bullets directly at people. Later, she was kettled, and observed three or four officers grab a child. Police threw her partner to the ground and threw a flashbang greande near his head. When media arrived, the police became less aggressive. The police informed her that if she was caught at protests in the area again, they would arrest her and take to Santa Rita jail. This along with the health issues mader her apprehensive of participation in protests against police brutality.

123.    On June 1, 2020, Plaintiff Celeste Wong marched down Broadway towards the OPD Administration building. She and the other protestors stopped and kneeled at 8th and Broadway, at around 8:00 p.m. Police launched flashbang grenades and tear gas into the crowd. They released at least ten canisters. The weapons irritated her eyes, lungs, and made it so hard to breathe she had to remove her mask.

124.    On June 1, 2020, plaintiff Qiaochu Zhang joined the youth protest at 5:30 p.m. He observed police launch projectiles and tear gas at protestors at 8th and Broadway. The police announcements were inaudible. He tried to run to his home two blocks away at 9th and Franklin, but all of Broadway was covered in teargas. He kneeled on the street due to distress. The police then kettled him and others. An officer told him he was being cited for being present in the area after the protest was declared unlawful. Mr. Zhang did not hear an unlawful assembly announcement and he had not intended to remain in the area after being tear gassed, but he was trapped by the gas and the surrounding police. Police told him that he would go straight to Santa Rita jail if he protested again.

125.    At all material times the actions and omissions of each defendant were intentional, and/or wanton, and/or willful, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to plaintiffs' rights, and/or grossly negligent, and/or negligent.

126.    Plaintiffs suffered unnecessary pain and bruising, trauma, as well as ongoing stress and axiety, as a result of defendants' tortious, wrongful, and constitutionally improper conduct.

127.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) on the basis that there is a well-defined community of interest in this litigation, the proposed class is easily ascertainable, and the proposed class is quite numerous.

128.    Plaintiffs seek to represent the following class: All demonstrators who participated and/or intended to participate in the protests beginning on May 29, 2020 in Oakland.

129.    Plaintiffs Akil Riley, Ian McDonnell, Niko Nada, Michael Cooper, Lindsey Filowitz, Danielle Gaito, Melissa Miyara, Leila Mottley, Aaron Rogachevsky, Chrsitina Stewart, Tayah Stewart, Katherine Sugrue, Celeste Wong, and Qiaochu Zhang seek to represent the following subclass: all demonstrators who inhaled tear gas at the protests in Oakland beginning on May 29, 2020. This subclass will be referred to as the "tear gassed demonstrators."

130.    Plaintiffs Akil Riley, Niko Nada, Jennifer Li, Sean Canaday, Michael Cohen, Andrea Constanzo, Johnathan Farmer, Katie Johnson, Bryanna Kelly, Lindsey Morris, Maria Gisella Ramirez, Tara Rose, Ashwin James Rupan, and Daniel Sanchez seek to represent the following subclass: all demonstrators who sustained physical injuries from flashbang grenades and/or other projectiles thrown or launched at them at the protests in Oakland beginning on May 29, 2020.  This subclass will be referred to as the "projectile injured demonstrators."

131.    Plaintiffs Ian McDonnell, Niko Nada, Azize Ngo, Maria Gisella Ramirez, Nicole Puller, Danielle Gaito, and Qiaochu Zhang seek to represent the following subclass: all demonstrators arrested and/or cited for a violation of the 8 p.m. curfew in effect on June 1, 2020. This subclass will be referred to as the "cited demonstrators."

132.    Plaintiffs and the putative class and subclasses were subjected to the constitutional and statutory violations described in this complaint. Upon information and

1  belief, the legal and factual issues are common to the class and affect all class members.

2      133.    Plaintiffs reserve the right to amend or modify the class and subclass

3  descriptions with greater specificity or further division into subclasses, as well as to limit the

4  class or subclasses to particular issues, as warranted.

5                          **Numerosity**

6      134.    The potential members of the class and of the subclasses as defined are so

7  numerous that joinder of all of them is impracticable. While the precise number of class

8  members has not been determined at this time, plaintiffs are informed and believe that the

9  class is comprised of more than 1000 individuals. The potential members of each subclass may

10  exceed 100 demonstrators.

11              **Commonality and Predominance**

12      135.    There are questions of law and fact that are common to the class and subclasses

13  and predominate over individualized questions. These common questions of law and fact

14  include, without limitation:

15      1.  Does the use of less-lethal weapons deployed by OPD infringe upon

16          demonstrators' constitutional rights to be free of excessive force, to peaceably

17          assemble, to freedom of expression, and freedom from viewpoint discrimination

18          under the First Amendment?

19      2.  Has the City of Oakland manifested a failure to adequately train and supervise its

20          police officers and members of its mutual aid network to properly utilize tear gas,

21          flashbang grenades, rubber bullets and other non-lethal weapons?

22      3.  Are there provisions omitted from the City of Oakland's and OPD's crowd control

23          policy and practices that are necessary to protect demonstrators' constitutional

24          rights?

25      4.  Did the City of Oakland knowingly place demonstrators in a danger created by its

26          affirmative unlawful action?

27      5.  Has the City of Oakland exhibited deliberate indifference to the unconstitutional

28          conduct complained of herein?

6.    Did the City of Oakland falsely arrest residents for violating curfew?

**Typicality**

136.    Named plaintiffs' claims are typical of the claims of putative class members. Plaintiffs and all members of the putative class sustained injuries and damages arising out of and caused by defendants' course of conduct, which, as alleged herein, violates federal and California law.

**Adequacy of Representation**

137.    Plaintiffs adequately represent and protect the interests of class and subclass members. Plaintiffs have no interests that are adverse to the class. Plaintiffs are similarly situated to other class and subclass members. Counsel who represents plaintiffs are competent and experienced in litigating civil rights class actions, police misconduct cases, and class actions generally.

**Superiority of Class Action**

138.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Each member of the class has been damaged and is entitled to recovery by reason of the unlawful policies and practices described herein. Class members are unlikely to otherwise obtain effective representation to ensure full enforcement of their rights absent class certification.

139.    Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

140.    Further, plaintiffs seek declaratory and injunctive relief, which is a remedy well-suited for class action litigation.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

141.    On August 27, 2020, plaintiffs presented a claim pursuant to California

Government Code §§ 910, *et seq*. to the City of Oakland.

142.    On September 18, 2020, the City of Oakland denied plaintiffs' claim.

**FIRST CLAIM FOR RELIEF**
**First Amendment Violation**
(By all plaintiffs against all defendants.)
(42 U.S.C. § 1983)

143.    Plaintiffs and plaintiff class incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

144.    By virtue of the foregoing, defendants violated plaintiffs' rights to freedom of speech, assembly, and association under the First Amendment to the United States Constitution, when acting under color of law, they declared the peaceful protests unlawful assemblies and kettled, tear gassed, shot flashbang grenades and other projectiles at plaintiffs. At the June 1 protest, a curfew order that was not narrowly tailored, and without sufficient notice, was issued to further suppress the plaintiffs' protected First Amendment activities including the right to free speech and assembly.

**SECOND CLAIM FOR RELIEF**
**Fourth Amendment Excessive Force and Unlawful Seizure**
(By all plaintiffs against all defendants.)
(42 U.S.C. § 1983)

145.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

146.    By virtue of the foregoing, defendants violated plaintiffs' rights to be free from excessive force and unlawful seizure when acting under color of law, they kettled, tear gassed, and shot flashbang grenades and other projectiles at plaintiffs.

**THIRD CLAIM FOR RELIEF**
**Fourteenth Amendment Substantive Due Process**
(By all plaintiffs against all defendants.)
(42 U.S.C. § 1983)

147.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

148.   By virtue of the foregoing, defendants violated plaintiffs' rights to substantive due process, when, acting under color of law, they affirmatively and indiscriminately kettled, tear gassed, and shot flashbang grenades and other projectiles at plaintiffs with deliberate indifference to the plaintiffs' personal and physical safety during a pandemic.

### FOURTH CLAIM FOR RELIEF
### *Monell* and Supervisory Liability
(By all plaintiffs against defendants City of Oakland and Chief Manheimer.)
(42 U.S.C. § 1983)

149.   Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

150.   Oakland and Chief Manheimer have systematically failed to adequately select, train, and supervise police officers under their control to prevent these officers from interfering with people's First Amendment rights to freedom of speech, assembly, and association and to refrain from punishing people in retaliation for the exercise of these rights.

151.   Oakland and Chief Manheimer have failed to adequately hold officers accountable for violations of people's rights, thereby condoning and encouraging it.

152.   Oakland and Chief Manheimer have systematically failed to adequately select, train, and supervise police officers under their control to refrain from engaging in excessive force against people exercising their First amendment rights.

153.   Oakland and Chief Manheimer have failed to adequately hold officers accountable for violations of people's rights, thereby condoning and encouraging these violations.

154.   The failures of Oakland and Chief Manheimer as set forth herein constitute unconstitutional customs and practices of Oakland.

### FIFTH CLAIM FOR RELIEF
### Assault and Battery
(By all plaintiffs against all defendants)

155.   Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

156.    By the above-described acts and/or omissions and/or failures to supervise and/or failure to institute and execute adequate training and policies on part of defendants, as alleged herein, plaintiffs were assaulted and battered, thereby entitling plaintiffs to damages pursuant to California law.

157.    The aiding and abetting and/or failure to intervene and/or failure to prevent the assault and battery gives rise to liability on the part of other, to be identified City of Oakland employee defendants.

**SIXTH CLAIM FOR RELIEF**
**Bane Act**
(By all plaintiffs against all defendants)
(Cal. Civil Code § 52.1)

158.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

159.    By their acts, omissions, customs, and policies, defendants, acting in concert/conspiracy, as described above, and with threats, intimidation, and/or coercion, violated plaintiffs' rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution and law: the First, Fourth and Fourteenth Amendments to the United States Constitution.

**SEVENTH CLAIM FOR RELIEF**
**False Arrest and False Imprisonment**
(By all plaintiffs against all defendants)

160.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

161.    By the above-described acts and/or omissions and/or failures to supervise and/or failure to institute and execute adequate training and policies on the part of defendants, as alleged herein, plaintiffs were falsely arrested and falsely imprisoned, thereby entitling plaintiffs to damages pursuant to California law.

162.    By virtue of the foregoing, defendant City of Oakland is liable under California Government Code section 815.2 for the acts of its employees, each of whom acted within the course and scope of his employment.

163.    The aiding and abetting and/or failure to intervene and/or failure to prevent this arrest gives rise to liability on the part of other, to be identified City oif Oakland employee defendants.

## EIGHTH CLAIM FOR RELIEF
### Negligence
(By all plaintiffs against all defendants)

164.    Plaintiffs and plaintiff class incorporate by reference the foregoing paragraphs as though fully set forth herein.

165.    At all material times, each defendant owed each plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation; and reasonable care.

166.    These general duties of reasonable care and due care owed to plaintiffs by all defendants included, but were not limited to, the following specific obligations: violating Constitutional rights, and the right to protection from bodily restraint, or personal insult, as secured by California Civil Code section 43, to conduct a reasonable investigation before effecting an arrest, and to refrain from abusing authority.

167.    By the acts and/or omissions alleged above, defendants acted negligently and breached their duty of due care owed to plaintiffs, which foreseeably resulted in the suffering of damages by Plaintiffs.

168.    By virtue of the foregoing, defendant City of Oakland is liable under California Government Code section 815.2 for the acts of its employees, each of whom acted within the course and scope of his employment.

## INJUNCTIVE AND DECLARATORY RELIEF

169.    Plaintiffs' only means of securing complete and adequate relief is to also seek declaratory and injunctive relief to provide plaintiffs substantial and complete protection from defendants unlawful policies and practices. Remedies at law are inadequate. Plaintiffs therefore seek both legal damages and equitable remedies in the form of declaratory and

injunctive relief against defendants.

## DAMAGES

170.    As a result of the actions of defendants as set forth above, plaintiffs have been injured and have suffered damages as follows:

a.    They have had their rights to peaceably assemble and redress their grievances irreparably harmed;

b.    They have suffered physical and psychological harm;

c.    They have incurred expenses for medical care;

d.    They have lost income; and

e.    They have incurred property loss.

WHEREFORE, plaintiffs request that this Court grant them relief as follows:

1.    A permanent injunction barring defendants from engaging in the unconstitutional conduct described herein and imposing appropriate remedial measures to prevent the repetition of such conduct in the future;

2.    Declaratory relief to determine that the acts and policies described herein violated the rights of the plaintiffs and class members;

3.    A determination that this action may proceed as a class action under Rule 23(b) of the Federal Rules of Civil Procedure;

4.    Designation of plaintiffs as class representatives and designation of plaintiffs' counsel as class counsel;

5.    General damages, in an amount to be determined;

6.    Special damages, in an amount to be determined;

7.    Nominal damages;

8.    Punitive damages where appropriate;

9.    Reasonable attorneys' fees under 42 U.S.C. § 1988;

10.    Costs of suit; and

11.    Such other and further relief as the Court may deem proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.


Dated: October 20, 2020                    SIEGEL, YEE, BRUNNER & MEHTA

                                           By:   */s/ Dan Siegel*
                                                 Dan Siegel

                                           ANNE BUTTERFIELD WEILLS, SBN 139845
                                           JANE BRUNNER, SBN 135422
                                           SONYA Z. MEHTA, SBN 294411
                                           EMILYROSE JOHNS, SBN 294319
                                           ANDREW CHAN KIM, SBN 315331
                                           SIEGEL, YEE, BRUNNER & MEHTA
                                           Email: abweills@gmail.com;
                                           janebrunner@hotmail.com;
                                           sonyamehta@siegelyee.com;
                                           emilyrose@siegelyee.com; chankim@siegelyee.com

                                           Attorneys for Plaintiffs
                                           ANTI POLICE-TERROR PROJECT,
                                           COMMUNITY READY CORPS, SEAN CANADAY,
                                           MICHAEL COHEN, MICHAEL COOPER, ANDREA
                                           MARINA COSTANZO, JOHNATHAN FARMER,
                                           LINDSEY FILOWITZ, DANIELLE GAITO, KATIE
                                           JOHNSON, BRYANNA KELLY, JENNIFER LI, IAN
                                           McDONNELL, MELISSA MIYARA, LINDSEY
                                           MORRIS, LEILA MOTTLEY, NIKO NADA, AZIZE
                                           NGO, NICOLE PULLER, MARIA RAMIREZ, AKIL
                                           RILEY, AARON ROGACHEVSKY, TARA ROSE,
                                           ASHWIN RUPAN, DANIEL SANCHEZ, CHRISTINA
                                           STEWART, TAYAH STEWART, KATHERINE
                                           SUGRUE, CELESTE WONG, and QIAOCHU
                                           ZHANG; on behalf of themselves and similarly
                                           situated individuals.