1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTI POLICE-TERROR PROJECT, et al.,

Plaintiffs,

v.

CITY OF OAKLAND, et al.,

Defendants.

Case No.  20-cv-03866-JCS

**AMENDED PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 52, 63, 66

Having considered the arguments and evidence submitted by the parties in connection with the pending motion for a preliminary injunction, the parties' agreement that a preliminary injunction may issue and their agreement as to some of the terms of that injunction, and for the reasons set forth in the order issued August 10, 2020 (dkt. 54), the Court entered a preliminary injunction on July 29, 2020 (dkt. 52).  Having now considered the parties' arguments and evidence submitted in connection with the parties' cross-motions to modify the preliminary injunction (dkts. 63, 66), and for the reasons that will be set forth in a separate written order to follow this Order, the Court issues this amended preliminary injunction, superseding the previous injunction.  This amended injunction modifies Section VI, pertaining to mutual aid.

This Order provides that certain crowd control tactics and munitions shall not be used except in very limited circumstances.  This Order should not be read as permission to use these tactics and munitions.  The Court in this Order does not conclude that the use of these tactics and munitions in the limited circumstances addressed below is either lawful or advisable.  Indeed, uses of force in specific instances, even if such force is not expressly prohibited by this Order, may or may not be lawful depending upon the circumstances at the time and existing precedent.  The Court does not address that question at this time.  The Court only determines that use of these

crowd control techniques outside of the limited circumstances listed herein will be prohibited during the pendency of this action.  As recognized in the Oakland Police Department's ("OPD") Crowd Control Policy, it remains incumbent upon OPD to "uphold the constitutional rights of free speech and assembly while relying on the minimum use of physical force and authority required to address a crowd management or crowd control issue."

It is hereby ORDERED that, unless and until this Order is modified or vacated by the Court, Defendants City of Oakland ("the City"), OPD, Police Chief Susan E. Manheimer, and all officers and employees of OPD, shall comply with the following restrictions during protests and demonstrations in Oakland:

## I.       TRAINING BULLETIN III-G

Except as modified in this order, OPD shall adhere to Training Bulletin III-G, OPD Crowd Control and Crowd Management (2013), attached as Exhibit A.

## II.      BADGES

Each OPD officer shall wear a badge, nameplate, or other device on the outside of his or her uniform or on his or her helmet which bears the identification number or the name of the officer, as required by Penal Code § 830.10.

## III.     BODY CAMERAS

All OPD officers shall utilize their Personal Digital Recording Device ("PDRD") in accordance with DGO I-15.1, Portable Video Management System. In addition, all OPD officers deployed to demonstrations in Oakland shall have their PDRDs activated and recording at all times while engaged in active policing activities.  They shall also have their PDRDs activated and recording when ordered to do so by a supervisor or commander.

## IV.      POLICE VEHICLES AND MOTORCYCLES

Motorcycles and police vehicles may not be used for crowd dispersal but may be used for purposes of observation, visible deterrence, traffic control, transportation, and area control during a crowd event.

## V.       TACTICS AND LESS LETHAL MUNITIONS

1. OPD officers are prohibited from using stinger grenades, wooden bullets, rubber or rubber-

United States District Court
Northern District of California

2

coated bullets, pepper balls, or similar munitions.

2. Chemical agents (including orthochlorobenzalmalononitrile), flashbang grenades, and foam-tipped projectiles shall be deployed only when (a) there is an imminent threat of physical harm to a person or significant destruction of property; and (b) other techniques, such as simultaneous arrests or police formations, have failed or are not reasonably likely to mitigate the threat.  The use of such munitions must be authorized by an OPD Operations Commander or Incident Commander.  None of these devices shall be deployed on peaceful protestors or indiscriminately into a crowd.  They may only be targeted at the specific imminent threat justifying the deployment.  Flash bang grenades and gas canisters must be deployed at a safe distance from the crowd to minimize the risk that individuals will be struck and injured by those devices.  When chemical agents are used, only the minimum amount of chemical agent necessary to obtain compliance may be used, in accordance with OPD's Department General Order K-3, USE OF FORCE.

3. Except where an immediate risk to public safety or of significant property damage makes it impossible to do so, before any of the devices listed in Section V(2) are deployed to disburse a crowd, OPD must have made at least two announcements to the crowd asking members of the crowd to voluntarily disperse and informing them that, if they do not disperse, they will be subject to arrest.  These announcements must be made using adequate sound amplification equipment in a manner that will ensure that they are audible to the crowd and must identify at least two means of escape/egress.  OPD must also allow the crowd sufficient time to disperse after making these announcements before deploying any of the devices in Section V(2).

## VI.  MUTUAL AID

### A.  Limitations on the Scope of the Injunction

This injunction binds only the City of Oakland, OPD, Police Chief Susan E. Manheimer, and all officers and employees of OPD.  The sections below establish standards OPD must follow when requesting mutual aid, but because no mutual aid partners have been named as defendants, the Court does not have the authority to issue injunctive relief that is binding on the mutual aid

3

1  partners.

2      This injunction does not prohibit an OPD or mutual aid officer from taking reasonable

3  action or using reasonable or necessary force as allowed by law against an individual in self-

4  defense or in defense of another person or officer.

5      In any situation where mutual aid officers are present at a demonstration, OPD personnel

6  shall to the extent possible assume front line positions between mutual aid officers and

7  demonstrators.

8      **B.    Standard Rules for Mutual Aid**

9      The OPD Incident Commander shall be responsible for ensuring that the requirements

10  listed below are met by mutual aid agencies providing assistance to OPD under a mutual aid

11  agreement, unless exigent circumstances prevent the fulfillment of these obligations:

12      i. The Incident Commander shall ensure that the mutual aid agency has been briefed and is

13      in agreement with OPD's Unity of Command structure under which only OPD

14      Commanders may authorize the use of less lethal munitions for crowd control and

15      dispersal;

16      ii. The Incident Commander shall ensure that the mutual aid agency has been briefed on

17      OPD's policy on prohibited weapons and force;

18      iii. The Incident Commander shall ensure that the officers of the mutual aid agency who

19      provide assistance to OPD do not bring or use any weapons or force prohibited under

20      OPD's policy;

21      iv. The Incident Commander shall ensure that the mutual aid agency has been provided a

22      copy of OPD's Crowd Control Policy and Use of Force policies;

23      v.  The Incident Commander shall ensure that officers of the mutual aid agency who

24      provide assistance to OPD are not assigned to front-line positions or used for crowd

25      intervention, control or dispersal unless there is a public safety emergency;

26      vi. The Incident Commander shall ensure that the officers of the mutual aid agency who

27      provide assistance to OPD complete required reports prior to being released from duty.

28      Agencies should provide the following documents/reports when they are applicable: Use of

force report, arrest report, crime report, injury report, equipment damage report and list of responding personnel.

### C.   Contingencies for Inability to Obtain Necessary Aid

If OPD determines that mutual aid is needed for an anticipated or actual protest or demonstration, OPD must make reasonable efforts to obtain such aid in a manner consistent with the requirements of Section VI(B) above.  If the Chief of Police certifies in writing that those efforts were not sufficient to meet OPD's anticipated need for mutual aid, OPD may instead obtain mutual aid pursuant to the terms of Training Bulletin III-G,[1] notwithstanding any requirement of Section VI(B) of this injunction.

Under those circumstances, the Chief of Police must file with the Court, no later than forty-eight hours after the incident requiring mutual aid, a detailed report stating as follows:

    i.   The reasons why OPD required mutual aid;

    ii.  The number of mutual aid officers OPD determined would be required;

    iii. The efforts OPD made to obtain mutual aid in compliance with Section VI(B) specifically for the incident requiring mutual aid, and the results of such efforts;

    iv.  The subsequent efforts OPD made to obtain mutual aid in compliance only with Training Bulletin III-G, and the results of such efforts;

    v.  The mutual aid partners, if any, that ultimately provided aid; and

    vi. The number of officers each mutual aid partner provided.

## VII.   TRAINING

By November 1, 2020, OPD shall conduct a special training session for OPD Incident Commanders, Operations Commanders, and Tango Team members concerning Training Bulletin III-G and this agreement. Plaintiffs' counsel may attend this training session. Further, Plaintiffs'

---

[1] Training Bulletin III-G was mandated under the settlement agreements and orders in *Spalding v. City of Oakland*, No. 11-cv-02867 TEH (N.D. Cal.), and *Campbell v. City of Oakland*, No. 11-cv-05498 JST (N.D. Cal.).  The parties agreed at the October 27, 2020 hearing that mandating compliance with Training Bulletin III-G as a substitute for the requirements of Section VI (B) is an appropriate remedy for OPD's inability to secure mutual aid under the original terms of the preliminary injunction.  The Court notes that Training Bulletin III-G has been in force for many years, and local law enforcement agencies, including the Alameda County Sheriff, have provided mutual aid to Oakland under its terms.

United States District Court
Northern District of California

counsel may conduct part of the training subject to scope and time parameters agreed to in advance by the parties.

## VIII.   FACE MASKS AND GLOVES

During the pendency of the state of emergency declared by either the President of the United States, or the Governor of the State of California, due to the COVID-19 pandemic, all OPD officers and employees deployed to demonstrations in Oakland must wear face masks and gloves whenever they interact with members of the public.

## IX.   AFTER-ACTION REPORT

The original injunction in this case required the City to produce a report to Plaintiffs no later than August 28, 2020.  Because that deadline has passed, the City has presumably complied, and Plaintiffs have not raised any issue of the City's compliance, that requirement is omitted from this amended injunction.

## X.   ENFORCEMENT

If Plaintiffs contend that OPD violates Training Bulletin III-G or any of this Order's provisions at a future protest or demonstration, Plaintiffs may request a hearing to seek relief, including a modification of this Order.  Unless the parties agree to a different briefing schedule, Defendants will have seventy-two hours to respond to Plaintiffs' request.

**IT IS SO ORDERED.**

Dated:  October 28, 2020

_____

JOSEPH C. SPERO
Chief Magistrate Judge