UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ANTI POLICE-TERROR PROJECT, et al., | |
|---|---|
| Plaintiffs, | Case No. 20-cv-03866-JCS |
| v. | |
| CITY OF OAKLAND, et al., | **ORDER DENYING MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE** |
| Defendants. | Re: Dkt. No. 96 |

# I. INTRODUCTION

Plaintiffs bring a Motion for Class Certification ("Motion") asking the Court to certify a class under Rule 23 to assert claims against the City of Oakland based on the use of tear gas at the George Floyd protests in Oakland between May 29, 2020 and June 1, 2020 ("the Protests"). For the reasons stated below, the Motion is DENIED without prejudice.[1]

# II. BACKGROUND

Plaintiffs brought this case as a putative class action against the City of Oakland ("the City"), then Chief of the Oakland Police Department ("OPD") Susan Manheimer, OPD Sergeant Patrick Gonzales, OPD Officer Maxwell D'Orso and OPD Officer Casey Fought. Dkt. No. 71. The events that gave rise to Plaintiffs' claims occurred over a four-day period that is described in detail in the Court's August 20, 2020 Order Granting in Part and Denying in Part Motion for Preliminary Injunction, Dkt. No. 54 ("Preliminary Injunction Order"). In the First Amended Class Action Complaint ("FACC"), which is the operative complaint, Plaintiffs assert the following claims: 1) 42 U.S.C. § 1983 based on the First Amendment (all Defendants) ("Claim One"); 2) 42

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

U.S.C. § 1983 based on the Fourth Amendment prohibitions on excessive force and unlawful seizures (all Defendants) ("Claim Two"); 3) 42 U.S.C. § 1983 based on Fourteenth Amendment substantive due process (all Defendants) ("Claim Three")[2]; 4) 42 U.S.C. § 1983, supervisory and *Monell* liability based on the First Amendment (Chief Manheimer and the City) ("Claim Four"); 5) assault and battery (all Defendants) ("Claim Five"); 6) Bane Act, Cal. Civ. Code section 52.1 based on the First, Fourth and Fourteenth Amendments (all Defendants) ("Claim Six"); 7) false arrest and false imprisonment (all Defendants) ("Claim Seven"); 8) Negligence (all Defendants) ("Claim Eight"). Plaintiffs seek injunctive and declaratory relief and damages in the FACC.

In connection with the preliminary injunction motion, Plaintiffs submitted numerous declarations describing their encounters with police, while Defendants produced activity and munitions logs, among other things. Since that time, a number of formal investigations have been completed, resulting in written reports addressing what occurred between May 29 and June 1, 2020 with respect to use of force. *See* Declaration of Sonya Z. Mehta in Support of Motion for Class Certification ("Mehta Motion Decl."), Ex. A (September 22, 2020 Amended Crowd Control After Action Report: May 29, 2020 to June 4, 2020 ("After Action Report"); Declaration of Sonya Z. Mehta in Support of Reply in Support of Motion for Class Certification ("Mehta Reply Decl."), Ex. 2 (May 10, 2021 Investigation Report by City of Oakland Community Police Review Agency ("CPRA Report"); Ex. 3 (Oakland Police Department Force Review Board Report, Dated April 20, 2021-May 4, 2021, Report No. 20F-0852 ("Use of Force Report")).[3]

---

[2] Plaintiffs stipulated at the Motion hearing that this claim is not being asserted by the proposed class but instead is only being asserted by the non-class plaintiffs.

[3] The CPRA Report and the Use of Force Report are the subject of an administrative motion to file under seal. *See* Dkt. No. 111. The After Action Report is public. Plaintiffs dispute that the CPRA Report and the Use of Force Report need to be filed under seal but requested that they be sealed in their entirety because Defendants contend these documents are confidential and the parties have not resolved their dispute. *See* Dkt. No. 111-1. Defendants assert that both reports are police officer personnel records and therefore, that they are protected by: 1) the federal official information privilege; 2) a federal right to privacy; and 3) California Penal Code section 832.7. In addition, because the documents discuss possible policy changes, Defendants contend they are protected by the deliberative process privilege. According to Defendants, the results of the reports have been publicly reported but the identities of the officers discussed in them (many of whom are not defendants in this case) have not; neither has the nature and substance of the deliberations contained in the reports been publicly disclosed. *See* Dkt. Nos. 114-1, 114-2. Given that Defendants concede that some of the information in the reports has already been disclosed, the Court DENIES the administrative motion to seal without prejudice to filing a more narrowly

In addition, at a press conference on June 2, 2021, Police Chief LeRonne Armstrong addressed the use of force by OPD and mutual aid partners called in to assist OPD, describing the findings of the Force Review Board for each day of the Protests. *Id.*, Ex. 1. According to Chief Armstrong, for May 29-31, all but two of the uses of force that were investigated, including the deployment of tear gas, were found to be in compliance with department policy. *Id.* at 2-3. In contrast, on June 1, 2020, 33 uses of force were found to be out of compliance with department policy. *Id.* at 3. With respect to the June 1 incidents, Chief Armstrong stated:

> I want to be clear that this was not a policy failure. Officers deployed tear gas outside of policy. Policy is very clear that in order to use that level of force there must be imminent danger to the Officer or a community member. During these investigative processes they determined that that did not exist.

*Id.* at 3-4. He announced that to address this shortcoming OPD has conducted "hundreds of hours of additional training in crowd control and crowd management[,]" made gas deployment teams smaller and "removed supervisors from being able to deploy gas." *Id.* at 4. Thus, supervisors "can no longer deploy gas" and "command staff will have to approve the removal of gas even into the field." *Id.*

Chief Armstrong also apologized for making incorrect statements at a previous press conference that Molotov Cocktails were seen at a June 1 event and that no youths or seniors were present. *Id.* at 5. He recognized that OPD "need[s] to make sure before [it] push[es] out information that [it] take[s] the time to actually vet that information" and stated that he had directed his staff to make sure that officer statements are supported by "actual evidence" before the department passes that information on to the media. *Id.* at 5.

Finally, Chief Armstrong acknowledged "failures in [OPD's] mutual aid deployment

---

tailored request that redacts only material that is confidential. To the extent Defendants seek to seal any material in the reports on the basis that it is confidential or privileged, they will have the burden of demonstrating that the redacted material is sealable. *See* Civil Local Rule 79-5(e). Because the Court has denied the administrative motion to seal, it may not rely on the CPRA Report or the Use of Force Report in deciding the instant Motion. Civil Local Rule 79-5(f). It is the Court's understanding that the parties were meeting and conferring on this issue, but a revised administrative motion to seal has not been filed and a settlement conference has been scheduled for early November. The Court therefore concludes that the resolution of the parties' dispute regarding the confidentiality of these reports is better left until Plaintiffs bring a renewed motion for class certification, should they choose to do so.

practices." *Id.* He announced that command staff had undergone training about how to "work closely with mutual aid" and that "new mandates" were being put in place to ensure that mutual aid agencies that assist OPD understand OPD's use of force policies, including the types of munitions that are not permitted under OPD policies.

### III. THE PROPOSED CLASS[4]

Plaintiffs ask the Court to certify a class of "all persons injured by tear gas deployed by the Oakland Police Department or its mutual aid allies during the George Floyd protests from May 29, 2020, to June 1, 2020." Reply at 2. They "seek certification for their First and Fourth Amendment federal claims and state claims of assault and battery, Bane Act, and negligence, all against the City of Oakland." *Id.* at 6. According to Plaintiffs, their First and Fourth Amendment claims against the City are asserted on a *Monell* theory. *Id.* They state further:

> Plaintiffs seek an injunction against the use of tear gas to remedy the City's First Amendment violations and declaratory relief that the use of force to quell and punish peaceful dissent was unconstitutional. Plaintiffs seek only nominal damages here. Plaintiffs seek a damages class to remedy the City's Fourth Amendment violations, assault and battery, Bane Act violations, and negligence.

*Id.* at 9. As to the injunctive and declaratory relief, they seek to certify the class under Rule 23(b)(2) and as to the damages class they seek to certify the class under Rule 23(b)(3). *Id.* Plaintiffs do not seek punitive damages on their class claims. *Id.*

### IV. ANALYSIS

#### A. Legal Standards Under Rule 23

A class action may be maintained under Rule 23 of the Federal Rules of Civil Procedure if

---

[4] Plaintiffs filed their class certification motion on April 30, 2021, before the CPRA and Use of Force Reports were completed. In the Motion, they asked the Court to certify a class "of all demonstrators who inhaled CS gas at the protests in Oakland on May 29, 2020, between 9:20 p.m. to 9:40 p.m. at or near 7th and Broadway in downtown Oakland, and June 1, 2020, from 7:30 p.m. to 8 p.m., at or near 8th and Broadway." Motion at 9. In their Reply brief, Plaintiffs explain that because of the new information in the reports that were issued after the Motion was filed – and also to address the Supreme Court's June 25, 2021 decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) addressing standing requirements – they have modified the class they ask the Court to certify. Reply at 2. Therefore, the Court describes here the arguments advanced in the Reply brief rather than the Motion. The Court notes that Defendants stipulated at the Motion hearing that the proposed class has standing under Article III of the Constitution.

4

all of the requirements of Rule 23(a) are satisfied and the plaintiff demonstrates that one of the requirements of Rule 23(b) is met as well. Rule 23(a) requires that a plaintiff seeking to assert claims on behalf of a class demonstrate: 1) numerosity; 2) commonality; 3) typicality; and 4) fair and adequate representation of the interests of the class. Fed. R. Civ. P. 23(a). Plaintiffs seeks certification under Rule 23(b)(2) and (b)(3). Rule 23(b)(2) allows a class action to be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) allows a class action to be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"[I]n evaluating a motion for class certification, a district court need only consider 'material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement.' " *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)). "The court's consideration should not be limited to only admissible evidence." *Id.*

### B.  Rule 23(a) Requirements

#### 1.  Numerosity

Under Rule 23(a), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no exact threshold number that must be met to meet this requirement; rather the rule "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). A class with more than 40 members "raises a presumption of impracticability [of joinder] based on numbers alone." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015). In analyzing numerosity "a court may make common-sense assumptions and reasonable inferences." *The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust*, 2016 WL 314400, at *6 (N.D. Cal. 2016).

Here, Plaintiffs rely on the following evidence to establish numerosity: 1) statements in the

After Action Report that on May 29 at 9:21 p.m. there were 5,000-6,000 protesters at 7th and Broadway and that at 9:27 and 9:33 p.m. gas was deployed in that location (Mehta Motion Decl., Ex. A at 67);  2)  a statement in the After Action Report that on June 1 "multiple gas deployments" were made at 7:36 p.m. to disperse a "crowd" at 8th and Broadway (*id.* at 82);  3) OPD Crime Reports by Officers who described a "crowd" of between 100 and 1,000 people at 8th and Broadway on the evening of June 1 when gas was deployed (Mehta Motion Decl., Ex. 2 at OAK 2084, 2145, 2151-52, 2175);  4) declarations of named Plaintiffs describing the injuries they suffered from tear gas being deployed into crowds on May 29 and June 1; and 5) the expert report of Dr. Peter Sporn stating that the use of tear gas and pepper spray can cause long-lasting injury and citing a review of 31 studies reflecting that 74% of people exposed to tear gas or pepper spray experienced mild injury, 17% experienced moderate injury, and 8.7%  experienced severe injury (Declaration of Dr. Peter Sporn, Dkt. No. 23, at ¶¶ 14, 15, 21).

The Court finds that this evidence is sufficient to establish, as a matter of common sense, that the proposed class is sufficiently numerous that joinder would be impracticable.  Certainly, there is sufficient evidence to form a reasonable judgment that more than 40 people experienced the effects of the tear gas that was fired into the crowds on the two occasions that were the focus on Plaintiffs' original proposed class definition.  Thus, it is sufficient to satisfy the numerosity requirements as to the expanded definition that is now before the Court as well.

Defendants challenge Plaintiffs' evidence on the ground that it does not provide a basis for determining how many people actually inhaled tear gas, pointing out that Plaintiffs do not provide an estimate of the class size and arguing further that Plaintiffs have not presented any evidence suggesting "that a reasonable estimate could be ascertained."  Opposition at 7 (citing *Sarmiento v. Sealy, Inc.*, No. 18-cv-01990-JST, 2020 WL 4458915, at *5 (N.D. Cal. May 27, 2020)).  *Sarmiento* is not on point, however, because in that case the plaintiffs estimated the proposed class to contain approximately 100 class members but provided "no evidence" to support that estimate, including the time records on which they purportedly relied.

Further, to the extent that Defendants rely on the inability to ascertain how many people are in the class, the Ninth Circuit has held that there is no separate ascertainability requirement for

class certification under Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127 (9th Cir. 2017). In *Briseno*, the defendants argued that the proposed class should not be certified because of a "failure of ascertainability," that is, "there would be no administratively feasible way to identify members of the proposed classes because consumers would not be able to reliably identify themselves as class members." 844 F3d at 1124. The court held that while the difficulty of ascertaining class membership could appropriately be considered in determining whether a class is "manageable" under Rule 23(b)(3), there is no separate requirement of administrative feasibility under Rule 23. *Id.* at 1126-1128. Thus, to the extent Plaintiffs' proposed class definition may pose challenges with respect to the identification of class members, that question is more appropriately addressed in determining whether the requirements of Rule 23(b)(3) are satisfied.

While the Ninth Circuit has not specifically addressed ascertainability in the context of a Rule 23(b)(2) class, district courts in the Ninth Circuit that have addressed the question have found that there is no ascertainability requirement in that context. *See, e.g., In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015) (distinguishing (b)(2) actions from (b)(3) actions and finding that ascertainability was not required under the former); *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *12 (C.D. Cal. Feb. 26, 2018); *Hernandez v. Lynch*, No. EDCV 16-00620-JGB (KKx), 2016 WL 7116611, at *30 n.17, 2016 U.S. Dist. LEXIS 191881, at *43 n.17 (C.D. Cal. Nov. 10, 2016) ("Courts have held that ascertainability may not be required with respect to a class seeking injunctive relief.").

Courts that have reached this conclusion have reasoned that "to the extent any aspect of ascertainability remains in this circuit after *Briseno*," such a requirement is inconsistent with the nature of a (b)(2) class. *Doe #1 v. Trump*, 335 F.R.D. 416, 436 (D. Or. 2020) (adopting the reasoning of *Shelton v. Bledsoe*, 775 F.3d 554, 561-62 (3d Cir. 2015)). In *Doe #1 v. Trump*, the court explained:

> a class under Rule 23(b)(2) is indivisible by nature and the alleged conduct can be declared unlawful as to all class members or none of them. 775 F.3d at 561. There is no right to opt out of such a class, the focus of this type of class is on the remedy sought, and the class must be cohesive as derived from Rule 23(b)(2), not ascertainability. *Id.* Because the focus is on the remedy sought, "and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in

a (b)(3) action." *Id*. That also is why a court need not analyze predominance and superiority in a Rule 23(b)(2) class. *Id*

*Id*. The court further pointed to the Advisory Committee note to Rule 23 that "illustrative" examples of a Rule 23(b)(2) class "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*." *Id.* (quoting *Shelton v. Bledsoe*, 774 F.3d at 561 (quoting Fed. R. Civ. P. 23 advisory committee's note (1966)) (emphasis added in *Shelton v. Bledsoe*)). This Court agrees with the reasoning of these district courts and concludes that ascertainability is not a requirement for certification of a Rule 23(b)(2) class. Therefore, Defendants' challenge on that basis fails as to the proposed (b)(2) class.

The Court finds that Plaintiffs' proposed class satisfies the numerosity requirement.

### 2. Commonality

The commonality requirement of Rule 23(a)(2) is met where "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke.' " *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal citation omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Thus, plaintiffs seeking to certify a class must "demonstrate 'the capacity of classwide proceedings to generate common answers' to common questions of law or fact that are 'apt to drive the resolution of the litigation.' " *Id.* (quoting *Wal-Mart*, 564 U.S. at 350). "[C]ommonality only requires a single significant question of law or fact." *Id*. at 589 (citing *Wal-Mart*, 564 U.S. at 359). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*.

In support of commonality, Plaintiffs contend that there are at least the following common issues: 1) whether the City used excessive force against protestors; 2) whether the City's use of force would chill a person of ordinary firmness' willingness to protest; 3) whether the City's policy permitting tear gas use violated the protesters' constitutional rights; and 4) whether

8

adequate announcements were made before tear gas was used. Reply at 7. They also contend all of the named plaintiffs suffered similar emotional and physical effects from the use of tear gas. *Id.*

Given the breadth of Plaintiffs' amended proposed class definition, which includes protesters who were injured by tear gas regardless of where and when it was used and even if it was used by OPD or mutual aid partners, the Court questions whether the class proposed by Plaintiffs satisfies the commonality requirement. In particular, to the extent the class includes protesters who were injured by tear gas deployed by mutual aid partners rather than OPD officers, any liability on the part of the City will depend on *different* policies and practices than are alleged to have led to the deployment of tear gas by OPD officers. Furthermore, the definition of the class is so broad that it includes even individuals who may not have been demonstrating peacefully. As to those individuals, the question of whether the City used excessive force or chilled their exercise of the right to protest is likely to give rise to different answers than for those who were protesting peacefully. Therefore, the Court concludes that this requirement is not satisfied, though it is likely Plaintiffs will be able to cure this deficiency by narrowing the class definition and/or creating sub-classes.

### 3. Typicality

The typicality requirement of Rule 23(a)(3) provides that "the [legal] claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020, *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

The proposed class representatives are Akil Riley, Maria Gisella Ramirez, Michael Cooper, Leila Mottley, Christine and Tayah Stewart and Qiaochu Zhang.[5] Reply at 9. Plaintiffs Aziz Ngo and Daniel Sanchez were not exposed to tear gas and Plaintiffs do not contend they are

---

[5] In the Reply, Plaintiffs seek to add John Farmer as a class representative. As Defendants did not have an opportunity to respond to this request, it is denied without prejudice.

1   class members.[6] *Id.* Likewise, they concede that the organizational plaintiffs are not class

2   members. *Id.* Plaintiffs have offered declarations of all the proposed class representatives. *See*

3   Dkt. Nos. 96-2 (Riley Decl., 96-3 (Ramirez Decl.), 96-4 (Cooper Decl.), 96-5 (Mottley Decl.)96-6

4   (Christina Stewart Decl.), 96-7 (Tayah Stewart Decl.), 96-8 (Zhang Decl.).  The declarations state

5   that they were protesting peacefully in crowds into which OPD officers deployed tear gas on May

6   29 and/or June 1, 2020, that they experienced pain and distress as a result, and they were

7   discouraged from engaging in further protests because of the experience.  Although the

8   descriptions of the locations where the use of tear gas occurred are not identical, it appears that the

9   deployments of tear gas to which they were exposed took place at or near 8th and Broadway on

10  the evenings of May 29 and June 1.

11        The named plaintiffs are not necessarily typical of the class to the extent that the class

12  includes individuals who were engaging in conduct that was not peaceful and individuals who

13  were injured by tear gas deployed by mutual aid partners as there is no evidence any named

14  plaintiff engaged in any non-peaceful conduct or that any named plaintiff was injured by tear gas

15  used by a mutual aid partner. Therefore, the Court finds that the typicality requirement is not

16  satisfied with respect to the proposed class as currently defined.  It is likely these defects can be

17  remedied, however, by limiting the class definition and/or finding a named plaintiff who was

18  injured by tear gas deployed by a mutual aid partner.

19        **4. Adequacy**

20        Under Rule 23(a)(4), the class representative must "fairly and adequately protect the

21  interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement is met,

22  courts ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

23  class members and (2) will the named plaintiffs and their counsel prosecute the actions vigorously

24  on behalf of the class?" *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998).  The

---

[6] At the Motion hearing, Plaintiffs stipulated that they also are not requesting that the following plaintiffs be designated as class representatives: Andrea Costanzo, Lindsey Filowitz, Bryanna Kelly, Ashwin Rupan, Nico Nada, Ian McDonnell, Jennifer Li, Sean Canaday, Celeste Wong, Michael Cohen, Tara Rose, Aaron Rogachevsky, Lindsey Morris, Melissa Miyara, Nicole Puller, Katherine Sugrue, Katie Johnson, and Danielle Gaito.

Court finds based on the declarations and evidence provided by the parties that this requirement is satisfied.

### C. Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate where the opposing party "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). "Originally designed for civil rights cases, Rule 23(b)(2) class actions are limited to those class actions seeking primarily injunctive or corresponding relief." *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 632 (C.D. Cal. 2007) ("*MIWON*") (citing Newberg on Class Actions, § 4.11 (4th ed.2002)).

Here, Plaintiffs ask the Court to certify the class under Rule 23(b)(2) to seek an injunction against the use of tear gas to remedy the City's alleged First Amendment violations, and declaratory relief that "the use of force to quell and punish peaceful dissent was unconstitutional." Reply at 9. As the court in *MIWON* observed, "Other courts have certified Rule 23(b)(2) classes in cases involving police action against demonstrators." 246 F.R.D. at 633 (citing *Chang v. United States*, 217 F.R.D. 262, 264, 267 (D.D.C.2003) (certifying a class of persons arrested en masse during an anti-World Bank/IMF protest in September 2002 in Washington D.C.); *Washington Mobilization Committee v. Cullinane*, 400 F.Supp. 186, 219 n. 2 (D.D.C.1975); *Sullivan v. Murphy*, 478 F.2d 938, 967 (D.C.Cir.1973) (noting class treatment was appropriate, despite the highly individualized nature of probable cause, because it was "a situation in which the police did not govern themselves by their ordinary procedures . . . And the arrests that were made were the product of a common course of conduct by the police."); *Sullivan v. Murphy*, 380 F.Supp. 867, 868 (D.D.C.1974)). Plaintiffs have not, however, demonstrated that the broad definition that they have proposed – spanning every use of tear gas over the entire four-day period – is appropriate. In particular, Plaintiffs have not provided sufficient evidence at this point that all of the uses of tear gas, whether by OPD or the mutual aid partners, are the result of a common policy or course of conduct at the command staff level. As the Court observed at the hearing, Plaintiffs may be able to

meet this burden by modifying the class definition.[7]

### D. Rule 23(b)(3)

Plaintiffs ask the Court to certify the same proposed class under Rule 23(b)(3) as a damages class as it asks the Court to certify under Rule 23(b)(2). In light of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011), in which the Supreme Court held that "individualized monetary claims belong in Rule 23(b)(3)" rather than (b)(2), the Court finds that this sort of hybrid certification is likely to confuse class members, who would be permitted to opt out of the same class under (b)(3) that they would be precluded from opting out of under (b)(2), even assuming the proposed definition satisfies both Rule 23(b)(2) and (b)(3). At a minimum, the classes Plaintiffs ask the Court to certify should be separate injunctive relief and damages subclasses. Further, because of problems relating to predominance and manageability, the Court finds that the proposed class does not satisfy the requirements of (b)(3).

As discussed above, Rule 23(b)(3) requires that 1) common questions of law or fact predominate; and 2) a class action is superior to other methods of adjudication. As currently defined, the Court concludes that the proposed class does not satisfy either of these requirements. The predominance requirement must be satisfied as to all the elements of the claims Plaintiffs seek to certify. *See Broomfield v. Craft Brew All., Inc*., No. 17-CV-01027-BLF, 2018 WL 4952519, at *12 (N.D. Cal. Sept. 25, 2018) (predominance requirement applies to all elements of claim); *In re Optical Disk Drive Antitrust Litig*., No. 3:10-MD-2143 RS, 2016 WL 467444, at *4 (N.D. Cal. Feb. 8, 2016) (same). Plaintiffs seek certification under Rule 23(b)(3) of their Fourth Amendment excessive force claims, as well as their state law claims for assault and battery, negligence, and the Bane Act. Therefore, the Court must address the elements of these claims to determine whether the predominance requirement is met.

To prevail on their *Monell* claim based on violation of the Fourth Amendment right to be free from excessive force, Plaintiffs must establish that: (1) the deployment of tear gas by OPD or

---

[7] As stated above, the Court may not consider the CPRA Report or the Use of Force Report because of the unresolved issue of confidentiality. Once the parties and the Court have resolved that issue Plaintiffs will be able rely on them to establish, if they can, that the requirements of Rule 23(b)(2) are met.

12

the mutual aid partners amounted to an unconstitutional application of excessive force; and (2) the City's policy caused the constitutional wrong. *Lowry v. City of San Diego*, 858 F.3d 1248, 1255 (9th Cir. 2017) (citing *Chew v. Gates*, 27 F.3d 1432, 1439 (9th Cir. 1994) (citing *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The first requirement, in turn, will require Plaintiffs to demonstrate that the particular use of force was objectively unreasonable, which requires the Court to consider: (1) "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted," (2) "the government's interest in the use of force," and (3) the balance between "the gravity of the intrusion on the individual" and "the government's need for that intrusion." *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011) (internal quotation marks and citations omitted). In *Graham v. Connor*, the Supreme Court explained that the "proper application [of this test] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989). Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).

      Given the fact-specific inquiry required to determine whether a particular use of force is reasonable, the proposed class definition, which encompasses *every* use of gas by OPD or mutual aid partners over a four-day period, raises a multitude of individualized issues about the specific circumstances surrounding the use of tear gas. Furthermore, as the City did not directly order the use of tear gas, the individual decisions of officers on the scene as to the deployment of tear gas may have to be assessed to determine whether the second *Monell* requirement is satisfied. While a more limited class seeking certification only as to one or two specific uses of tear gas might eliminate this problem, the individualized issues that would have to be adjudicated for the broad class Plaintiffs now propose would overwhelm the common issues of fact or law. Therefore, the predominance requirement is not met as to the Fourth Amendment excessive force claim. The Court reaches the same conclusion as to the state law assault and battery claim because "[a] state

law battery claim is a counterpart to a federal claim of excessive use of force" and requires the plaintiff to prove that the peace officer's use of force was unreasonable." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009).

As to the remaining state law claims for negligence and under the Bane Act, Plaintiffs have not meaningfully addressed the elements of those claims as they relate to a municipality. Instead, they have simply cited form jury instructions for individual claims to establish predominance. They cite CACI 3066, which sets forth the elements of a Bane Act claim, including "threats, intimidation or coercion" that were "intended to deprive the plaintiff" of their civil rights and which were a substantial factor in harm caused to the plaintiff. Yet whether the use of tear gas was a threat or form of coercion under the Bane Act will turn on the specific circumstances surrounding the many incidents that occurred during the Protests. Similarly, the question of whether City breached its duty of care to the class – the common issue cited by Plaintiffs based on CACI 400 – will require individualized inquiries as to the circumstances under which tear gas was employed. Therefore, the Court concludes the predominance requirement is not satisfied.

The Court also concludes that determining class membership for the proposed class presents serious challenges that are likely to make adjudication on a class basis unmanageable.

## V. CONCLUSION

For the reasons stated above, the Motion is DENIED without prejudice. Following the settlement conference scheduled for November 3, 2021, the parties are requested to provide, within one week, a status report that includes a proposed briefing schedule on a renewed motion for class certification should Plaintiffs elect to file one.

**IT IS SO ORDERED.**

Dated: October 18, 2021

JOSEPH C. SPERO
Chief Magistrate Judge