WALTER RILEY, SBN 95919
LAW OFFICE OF WALTER RILEY
1407 Webster Street, Suite 206
Oakland, CA 94612
Telephone: (510) 451-1422
Facsimile: (510) 451-0406
Email: walterriley@rrrandw.com

DAN SIEGEL, SBN 56400
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com

JAMES DOUGLAS BURCH, SBN 293645
National Lawyers Guild
558 Capp Street
San Francisco, CA 94110
Telephone: (415) 285-5067 x.104
Email: james_burch@nlgsf.org

Attorneys for Plaintiffs
ANTI POLICE-TERROR PROJECT,
COMMUNITY READY CORPS, et al.

*Additional counsel on signature page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTI POLICE-TERROR PROJECT, COMMUNITY READY CORPS, SEAN CANADAY, MICHAEL COHEN, MICHAEL COOPER, ANDREA COSTANZO, JOHNATHAN FARMER, LINDSEY FILOWITZ, DANIELLE GAITO, KATIE JOHNSON, BRYANNA KELLY, JENNIFER LI, IAN McDONNELL, MELISSA MIYARA, LINDSEY MORRIS, LEILA MOTTLEY, NIKO NADA, AZIZE NGO, NICOLE PULLER, MARIA RAMIREZ, AKIL RILEY, AARON ROGACHEVSKY, TARA ROSE, ASHWIN RUPAN, DANIEL SANCHEZ, CHRISTINA STEWART, TAYAH STEWART, KATHERINE SUGRUE, CELESTE WONG, and QIAOCHU ZHANG; on behalf of themselves and similarly situated individuals, Plaintiffs, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF OAKLAND, OPD Police Chief SUSAN E. MANHEIMER, OPD Sergeant PATRICK GONZALES, OPD Officer MAXWELL D'ORSO and OPD Officer CASEY FOUGHT, <br><br> Defendants. | Case No. 3:20-cv-03866-JCS <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing: September 9, 2022 <br> Time: 2 p.m. <br><br> Hon. Joseph C. Spero |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 3

 I.  INTRODUCTION ................................................................................................ 3

 II.  CASE BACKGROUND ....................................................................................... 4

   A. Introduction ............................................................................................ 4

   B. Previous cases ........................................................................................ 4

   C. Case summary ........................................................................................ 5

 III. TERMS OF PROPOSED PERMANENT INJUNCTION ................................... 7

   A. Continuing Jurisdiction ......................................................................... 7

   B. Injunctive Relief .................................................................................... 7

   C. Additional Terms ................................................................................. 12

 IV. SETTLEMENT OF INDIVIDUAL CLAIMS .................................................. 12

 V.  ATTORNEYS' FEES AND COSTS ................................................................. 13

 VI. ARGUMENT ...................................................................................................... 14

   A. Class Certification Has Been Granted and Remains Appropriate ............... 14

   B. The Consent Decree is Fair, Reasonable, and Should Be Granted Preliminary Approval ......................................................................... 14

   C. The Proposed Notice Satisfies Due Process and Should Be Approved ........ 15

   D. The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing ........................................... 16

 VII. CONCLUSION .................................................................................................... 17

1

# TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9thCir. 1992) ........................................................14

4

*Frank v. Gaos*,
    ___ US ___, 139 S.Ct. 1041 (2019) ...............................................14

5

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303, at *1 (N.D. Cal. Mar. 31, 2015) .........................15

*In re High-Tech Employee Antitrust Litig.*,
    2013 WL 6328811, at *1 (N.D. ....................................................15

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .......................................................14

*In re: Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prod. Liab. Litig.*,
    2016 WL 6091259, at *1 (N.D. Cal. Oct. 18, 2016) .........................15

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................14, 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .........................................................17

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .........................................................16

*Ruch v. AM Retail Grp., Inc.*,
    2016 WL 1161453, at *1 (N.D. Cal. Mar. 24, 2016) .........................15

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ....................................................17

*Tadepalli v. Uber Techs., Inc.*,
    2015 WL 9196054, at *1 (N.D. Cal. Dec. 17, 2015) .........................15

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .........................................................14

**RULES**

Fed. R. Civ. P. 23(e)(2) ........................................................................14

**TREATISES**

William B. Rubenstein,
    Newberg on Class Actions, § 13.15 (5th ed. 2016) ....................14, 15

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on September 9, 2022, at 2 p.m., or as soon thereafter as

4

the matter may be heard before the Honorable Joseph C. Spero in Courtroom F, located at 450

5

Golden Gate Avenue, San Francisco, California, plaintiffs Akil Riley, Maria Gisella Ramirez,

6

Michael Cooper, Leila Mottley, Christine Stewart, Tayah Stewart, Qiaochu Zhang, and

7

Johnathan Farmer will, and do hereby, move this Court for an order: (1) granting preliminary

8

approval of the proposed class settlement submitted herewith as Exhibit 1 to the Declaration of

9

Dan Siegel in support of this motion; (2) approving the manner and form of giving notice of the

10

proposed settlement to the class members submitted herewith as Exhibit 2 to the Declaration

11

of Dan Siegel in support of this motion; (3) scheduling deadlines for objections; and (4)

12

scheduling a fairness hearing regarding final approval of the settlement.

13

In support of this motion, moving plaintiffs state that the settlement: (1) represents a

14

comprehensive settlement of the issues raised in this case; (2) offers a fair and equitable result

15

to those affected by it; and (3) will result in significant benefits for the class members,

16

defendants, and the public at large.

17

This motion is based upon this notice of motion and motion, the accompanying

18

memorandum of points and authorities and Declaration of Dan Siegel and attached exhibits, all

19

pleadings and papers on file in this action, and any argument and evidence the Court permits at

20

the hearing of this motion.

21

///

22

///

23

///

24

25

26

27

28

Rule 23 of the Federal Rules of Civil Procedure does not require a hearing on a motion seeking preliminary approval of a class action settlement. Moving plaintiffs and defendants City of Oakland, former OPD Police Chief SUSAN E. MANHEIMER, OPD Sergeant PATRICK GONZALES, OPD Officer MAXWELL D'ORSO, and OPD Officer CASEY FOUGHT agree to forego a hearing unless the Court concludes that a hearing is necessary.

Dated: August 3, 2022           SIEGEL, YEE, BRUNNER & MEHTA


By: ___*/s/ Dan Siegel*_____
       Dan Siegel

**Attorneys for Plaintiffs**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The proposed settlement agreement is designed to redress complaints by the plaintiff class regarding the actions of the Oakland Police Department ("OPD") during the protests that occurred in Oakland on May 29 - June 1, 2020, over the murder of George Floyd by Minneapolis police officers. The parties have worked diligently and cooperatively, with the assistance of Magistrate Judge Laurel Beeler, to fashion a settlement agreement that includes the entry of a permanent injunction, expedited Court review of future allegations that the City has violated that injunction for a period of five years, substantial revisions in the procedures of the Oakland Police Department when policing protests in the City, and enhanced procedures for OPD's monitoring and supervision of mutual aid partners during demonstrations in Oakland.

In addition to the class claims, the parties have settled individual claims by 24 plaintiffs alleging that OPD used excessive force against them during the protests through its deployment of chemical weapons and other "non-lethal" munitions and one plaintiff alleging false arrest. The amount to be paid directly to the individual plaintiffs is $325,000, without any deductions for attorneys' fees or costs. The settlement also provides for payment of attorneys' fees and costs in the amount of $1.2 million for work on both the class and individual claims.

The proposed settlement agreement is fair, adequate, and reasonable and is the product of serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel. It satisfies all the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. Additionally, the parties' proposed notice and schedule for a fairness hearing will allow class members an adequate opportunity to review and comment on the settlement agreement and is consistent with the parties' desire for prompt implementation of the agreement.

Plaintiffs ask that the Court: (1) preliminarily approve the settlement agreement (Exhibit A to the Declaration of Dan Siegel); (2) approve the proposed form of the class notice (Exhibit B to the Declaration of Dan Siegel) and distribution plan; (3) set a deadline for class members to submit any objections to the agreement; (4) set a deadline for plaintiffs to file a motion for final

approval and for filing responses to any timely-filed class member objections; and (5) schedule a fairness hearing to address plaintiffs' motion for final approval and any objections.

## II.   CASE BACKGROUND

### A.   Introduction

Plaintiffs filed their Verified Application for a Temporary Restraining Order and Class Action Complaint for Damages and Injunctive Relief on June 11, 2020, shortly after the conclusion of Oakland demonstrations protesting the murder of George Floyd. Dkt. #1. Unfortunately, this was not the first time protestors in Oakland were required to file suit over police conduct during the course of protected First Amendment activity.

In fact, this is the fifth class action case brought against the City of Oakland since 2004 regarding OPD's actions during mass protests and demonstrations. In none of the previous cases did the City of Oakland agree to effective means for court enforcement of City policy in the event of future political protests. The terms of this agreement include the means for expedited and effective judicial review should circumstances arise that require the court's intervention to protect the constitutional rights of people engaging in protected First Amendment activity in Oakland.

### B.   Previous cases

In December 2004, plaintiffs and the City entered into a stipulation to resolve *Coles v. City of Oakland*, N.D. Cal. C-03-2961 TEH, and *Local 10, International Longshore and Warehouse Union*, N.D. Cal C-03-2962 TEH. These cases arose from protests against the war in Iraq on April 7, 2003, at the Port of Oakland. The settlement provided for the adoption of OPD's new crowd control policy and the dismissal of plaintiffs' claims for declaratory and injunctive relief. The agreement did not establish a procedure for challenging future violations of the new policy by OPD.

In May 2013, plaintiffs, the City, and the County of Alameda agreed to the settlement of *Spalding v. City of Oakland*, N.D. Cal. C-11-2867 TEH, arising from a mass arrest on November 5, 2010, of 150 people protesting the lenient sentencing of BART police officer Johannes Meserle for killing Oscar Grant. Plaintiffs alleged that OPD violated the crowd control policy

Oakland adopted following the *Coles* and *Local 10* actions. The parties agreed to abide by the *Coles/Local 10* settlement, but the agreement provided no effective means to redress claims that OPD had violated its crowd control policy in the future.

In July 2013, plaintiffs and the City of Oakland agreed to settle *Campbell v. City of Oakland*, N.D. Cal. C-11-5498 JST, arising from the actions of OPD during the Occupy Oakland protests in October 2011. The agreement provided for the City's agreement to continue to abide by the crowd control policy as set forth in *Coles/Local 10* and *Spalding.* No effective process to enforce the crowd control was included in the settlement.

## C.    Case summary

On June 17, 2020, plaintiffs moved for a temporary restraining order (Dkt. #13), supporting their motion with the declarations of Andrew Chan Kim (Dkt. #14), Sarah Belle Lin (Dkt. #15), Qiaochu Zhang (Dkt. #16), Niko Nada (Dkt. #17), Melissa Miyara (Dkt. #18), Liam Cain (Dkt. #19), Leila Mottley (Dkt. #20), Jennifer Li (Dkt. #21), Ian McDonnell (Dkt. #22), Dr. Peter Sporn (Dkt. #23), Erica Hruby (Dkt. #24), Christa Atherholt (Dkt. #25), Cat Brooks (Dkt. #26), and Anne Kelson (Dkt. #27). On June 18, 2020, the Court ordered the parties to confer on the terms of a temporary restraining order and issued the order. Dkt. #33, #34.

On July 29, 2020, and August 10, 2020, the Court issued its order granting in part and denying in part plaintiffs' motion for a preliminary injunction. Dkt. #52, #54. On October 28, 2020, the Court filed its Amended Preliminary Injunction Dkt. #82. On October 31, 2020, the Court denied plaintiffs' motion to enforce and modify the preliminary injunction and granted in part and denied in part defendant City of Oakland's motion to modify the preliminary injunction. Dkt. #83.

Plaintiffs filed their motion for class certification on April 30, 2021. Dkt. #96. On October 18, 2021, the Court denied the motion for class certification without prejudice. Dkt. 124. On January 6, 2022, the parties filed their stipulated order for class certification. Dkt. 139. Following additional briefing, the Court granted the stipulation on February 1, 2022. Dkt. 149. The Court certified the class as follows:

> The class certified is defined as "all persons injured by tear gas deployed by the Oakland Police Department or its mutual aid partners

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

during the George Floyd protests on May 29-31, and June 1, 2020, while protesting peacefully in the City of Oakland, with respect to their claims against the City of Oakland for violations of their rights under the First Amendment, Fourth Amendment (excessive force), and Fourteenth Amendment to the United States Constitution and their state law claims of assault and battery, negligence, and violation of the Bane Act (Civil Code § 52.1).

The parties engaged in extensive discovery, including the production of many hours of body worn camera footage and other video footage pertaining to the demonstrations of May 29 – June 1, 2020; production of voluminous additional documents by Defendant; production of medical records and other records supporting the claims of Plaintiffs; and other written discovery. The parties took 36 depositions to prepare for trial. Defendants deposed all 27 individual plaintiffs and the representatives of organizational plaintiffs Anti Police-Terror Project and Community Ready Corps. Plaintiffs deposed seven OPD officials. Plaintiffs reviewed tens of thousands of pages of documents produced by the City of Oakland and approximately 85 hours of videotapes obtained from the City and other sources.

On July 14, 2020, December 10, 2021, January 13, 2022, and April 14, 2022, the parties participated in settlement conferences with Magistrate Judge Laurel Beeler. The parties met on numerous additional occasions for respectful and contentious settlement discussions and exchanged multiple written proposals.

The parties reached agreement on the terms of the proposed settlement. Plaintiffs identified several important objectives in the settlement negotiations: (1) That the terms of the agreement be incorporated in a permanent injunction; (2) That the injunction include provisions for expedited resolution of claims that the injunction had been violated; (3) That the injunction include a prohibition on the use of tear gas and other chemical weapons against persons involved in protest activity; and (4) That the injunction include provisions requiring that the Oakland Police Department supervise and monitor the activities of mutual aid agencies.

The plaintiffs were substantially successful in achieving their objectives: (1) The agreements on non-economic terms will be embodied in an enforceable permanent injunction. (2) After prolonged bargaining, Oakland and the plaintiffs agreed on a process of expedited review of claims that the injunction had been violated. The plaintiffs sought to have the process

of expedited review permanent, but finally accepted the City's compromise to a five-year period.
(3) Plaintiffs sought a complete ban on the use of tear gas and other chemical weapons.
Ultimately the parties agreed on a series of limitations and safeguards for the use of such
weapons, and plaintiffs concluded that they were unlikely to obtain further relief on this issue if
the case were to be tried. (4) The parties agreed on a series of measures that make the Oakland
Police Department responsible for the supervision of mutual aid agencies.

      The parties reached agreement on settlement of the damages claims of 25 plaintiffs. The
two organizational plaintiffs, the Anti Police-Terror Project and the Community Ready Corps,
do not seek damages. The damages claims of two plaintiffs have not settled.

      The parties also reached agreement on plaintiffs' counsel's claims for attorneys' fees and
costs. All of the terms of this settlement are contained within the Stipulation of Settlement. At
all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's
length.

## III.    TERMS OF PROPOSED PERMANENT INJUNCTION

### A.    Continuing Jurisdiction

      Compliance with this Permanent Injunction shall be subject to the Court's
continuing jurisdiction for a period of five years. During that period, in the event
that any party asserts that another party is failing or has failed to abide by the
terms of this Order, the parties shall promptly enter into discussions in an effort
to resolve that dispute. If the dispute is not resolved and reduced to a written
agreement within 30 calendar days of the notification, or another timeline agreed
to in writing by the parties, any party may invoke the jurisdiction of this Court.
The Court shall schedule such proceedings as may be necessary to hear and
resolve the dispute and to enter a final and binding order on said matter.

### B.    Injunctive Relief

      (1)    Except as expressly modified below, OPD shall follow the provisions of
Training Bulletin III-G, OPD Crowd Control and Crowd Management (2013) in all
respects, including but not limited to the provisions of Section IX, "Mutual Aid &

1   Multi-Agency Coordination." In addition to the information and materials

2   specified therein for distribution to mutual aid agencies, OPD will provide copies

3   of this Order to all such agencies. During the period of the Court's continuing

4   jurisdiction, in the event that OPD chooses to modify Training Bulletin III-G, it

5   shall give counsel for plaintiffs advance notification of such changes and shall

6   meet and confer with plaintiffs' counsel regarding such changes before

7   implementing them. In the event counsel for plaintiffs believe that such changes

8   violate the substantive provisions of this Order they may invoke the Court's

9   jurisdiction pursuant to Section A, above.

10   (2)     Every OPD police officer shall wear a badge, nameplate, or other device on

11   the outside of his or her uniform or helmet which bears the identification number

12   or name of the officer as required by Penal Code § 830.10, at all times while

13   engaged in law enforcement activities in connection with any demonstration or

14   crowd event in the City of Oakland.

15   (3)     Every OPD police officer shall utilize a Personal Digital Recording Device

16   (PDRD) and shall have that device activated whenever taking any enforcement

17   action or when ordered to activate their PDRD by a supervisor or commander

18   during a crowd control situation in the City of Oakland.

19   (4)     No OPD police officer shall use a motorcycle, police vehicle, dog, or horse

20   for crowd dispersal in connection with any demonstration or crowd event in the

21   City of Oakland. Motorcycles, police vehicles, and horses may be used for purposes

22   of observation, visible deterrence, traffic control, transportation, and area control

23   in connection with any demonstration or crowd event.

24   (5)     No OPD police officer shall use stinger grenades, wooden bullets or wooden

25   batons, rubber bullets or rubber batons, or pepper balls in connection with any

26   demonstration or crowd event in the City of Oakland.

27   (6)     No OPD police officer shall use tear gas or other crowd control chemical

28   agents, including orthochlorobenzalmalononitrile, for purposes of crowd

management, crowd control, or crowd dispersal in connection with any demonstration or crowd event in the City of Oakland except subject to all of the following:

    (i)    Crowd control chemical agents shall not be used in demonstrations or other crowd events without the authorization of a commanding officer or incident commander.

    (ii)    Crowd control chemical agents shall only be used if the use is objectively reasonable to defend against a threat to life or serious bodily injury to any individual, including any peace officer, or to bring an objectively dangerous and unlawful situation safely and effectively under control. As an example, an isolated incident of vandalism, without more, does not rise to the level of an objectively dangerous and unlawful situation sufficient to justify the use of crowd control chemical agents.

    (iii)    Crowd control chemical agents shall only be used if other alternatives to force, including but not limited to extraction, encirclement, and multiple simultaneous arrests or police formations have been attempted, when objectively reasonable, and have failed.

    (iv)    Crowd control chemical agents shall not be used for crowd control without first giving audible warnings to the crowd when objectively reasonable to do so, and an objectively reasonable opportunity to disperse.

    (v)    An objectively reasonable effort must be made to identify persons engaged in violent acts and those who are not, and crowd control chemical agents must be targeted only towards those individuals engaged in violent acts. Crowd control chemical agents shall be deployed to explode at a safe distance from the crowd to minimize the risk of personal injury. Incidental impacts on peaceful protestors, bystanders, medical personnel, journalists, or other unintended targets shall be minimized.

(vi)    If crowd control chemical agents are contemplated in crowd situations, OPD shall have medical personnel on site prior to their use and shall make provision for decontamination and medical screening to those persons affected by the chemical agent(s).  Medical assistance shall be promptly provided for injured persons when it is reasonable and safe to do so. An objectively reasonable effort will be made to extract individuals in distress.

(vii)    Members shall use the minimum amount of chemical agent necessary to obtain compliance in accordance with Department General Order K-3, USE OF FORCE.

(7)    No OPD police officer shall use Direct Fired Specialty Impact Less-Lethal Munitions (SIM) for purposes of crowd management, crowd control, or crowd dispersal in connection with any demonstration or crowd event in the City of Oakland.

(8)    Beginning no later than 90 days after the Court's Order approving this Permanent Injunction and no less than every 18 months thereafter during the period of the Court's continuing jurisdiction, OPD shall conduct a special training session for the Chief of Police, all Deputy and Assistant Chiefs, Incident Commanders, Operations Commanders, and Tango Team members concerning Training Bulletin III-G and this Injunction. Plaintiffs' counsel shall be provided the opportunity to provide input into the curriculum for the special training sessions and to attend those sessions.

(9)    No later than 90 days after the Court's Order approving this Permanent Injunction, OPD shall conduct a special training session for all officers who may be assigned to participate in law enforcement duties in connection with protests and demonstrations on the proper writing of incident reports. That training shall include explicit prohibition on the use of boilerplate and inaccurate or misleading language in such reports. Thereafter this training shall be incorporated into OPD's Report Writing Manual and regular training on writing incident reports.

(10)    On any occasion in which the Oakland Police Department requests mutual law enforcement aid for large demonstrations and mass gatherings, OPD shall do the following:

(i) OPD shall ensure mutual aid agencies are briefed on OPD's Crowd Control Policy.

(ii) OPD shall brief mutual aid agencies on OPD's Unity of Command structure and, to the extent possible, ensure mutual aid agencies are in agreement with it.

 a. Under OPD's Unity of Command structure, only OPD Commanders may authorize the use of chemical agents for crowd control and dispersal. However, OPD officers and mutual aid officers may use reasonable or necessary force as allowed by law against an individual in self-defense or in defense of another person or officer.

(iii) OPD shall inventory the types of less-lethal crowd control weapons brought by mutual aid agencies. Should a mutual aid agency bring less-lethal crowd control weapons that are not authorized under OPD's Crowd Control Policy, OPD shall do the following:

 a. Require those agencies to quarantine the weapons that are not authorized; or

 b. Assign officers of those agencies to support functions that will not have primary contact with crowds and thus are not likely to involve the use of crowd control weapons not authorized by OPD, unless there is a public safety emergency.

(iv) While OPD cannot direct or control all uses of force by officers of mutual aid agencies, to the extent possible, OPD shall ensure that officers of mutual aid agencies do not use weapons or force that is prohibited under OPD's Crowd Control Policy.

///

### C.    Additional Terms

This Order sets forth all of the permanent injunctive relief in this case.  As of the date of entry of this Order, the preliminary injunction issued by the Court shall cease to have any legal effect.  This Order shall be modified to incorporate the Court's further rulings in this case, if any.

## IV.    SETTLEMENT OF INDIVIDUAL CLAIMS

The Parties have resolved the claims of 25 of the individual plaintiffs as follows:

| Plaintiff | Amount |
|---|---|
| Plaintiff Sean Canaday | $15,000 |
| Plaintiff Michael Cohen | $5,000 |
| Plaintiff Michael Cooper | $8,500 |
| Plaintiff Andrea Costanzo | $8,500 |
| Plaintiff Jonathan Farmer | $8,500 |
| Plaintiff Lindsey Filowitz | $45,000 |
| Plaintiff Danielle Gaito | $16,500 |
| Plaintiff Katie Johnson | $8,500 |
| Plaintiff Jennifer Li | $25,000 |
| Plaintiff Ian McDonnell | $12,500 |
| Plaintiff Melissa Miyara | $8,500 |
| Plaintiff Leila Mottley | $5,000 |
| Plaintiff Niko Nada | $12,500 |
| Plaintiff Azize Ngo | $2,500 |
| Plaintiff Nicole Puller | $12,500 |
| Plaintiff Maria Ramirez | $12,500 |
| Plaintiff Akil Riley | $8,500 |
| Plaintiff Aaron Rogachevsky | $12,500 |
| Plaintiff Tara Rose | $20,000 |
| Plaintiff Daniel Sanchez | $25,000 |
| Plaintiff Christina Stewart | $12,500 |

| | |
|---|---|
| Plaintiff Tayah Stewart | $12,500 |
| Plaintiff Katherine Sugrue | $10,000 |
| Plaintiff Celeste Wong | $12,500 |
| Plaintiff Qiaochu Zhang | $5,000 |

Organizational plaintiffs Anti Police-Terror Project and Community Ready Corps did not seek monetary damages in this Action and shall receive none in settlement. The damages claims of plaintiffs Lindsey Morris and Ashwin Rupan have not been resolved. Class counsel no longer represents Mr. Rupan.

The Court's approval of the settlement of the individual plaintiffs' claims is not required.

## V. ATTORNEYS' FEES AND COSTS

Class Counsel requests the Court to approve the parties' agreement for an award of reasonable attorneys' fees and costs in the amount of $1,200,000, which encompasses all attorneys' fees and costs incurred in connection with this Action, including the claims of the individual plaintiffs. The parties engaged in vigorous, arms-length, and non-collusive negotiations over the amount of attorneys' fees and costs and substantially modified their positions in the course of such negotiations.

Plaintiffs initially presented their demand for attorneys' fees and costs to Defendants in the amount of $1,548,200 for fees representing 3,459 hours of time by attorneys and paralegals and $33,045 for costs, for a total of $1,581,245, on May 23, 2022. Notably, plaintiffs' counsel intentionally sought hourly rates approximately 10 percent less than could be justified in the San Francisco Bay Area based upon the Laffey Matrix and Judge Illston's decision in *Ridgeway v. Wal-Mart Stores*, N.D. Cal. 08-cv-0932 (2017).

Plaintiffs agreed to reduce their fee demand by 20 percent and then agreed to further reductions to bring the total for fees and costs to $1,200,000, a reduction of 24 percent from their original demand. Plaintiffs also waived additional fees incurred following the presentation of their demand.

///

///

1    **VI.    ARGUMENT**

2        **A.    Class Certification Has Been Granted and Remains Appropriate**

3        On February 1, 2022, the Court found the requirements of Rules 23(a) and 23(b)(2)

4    satisfied and certified the class in this case. The class definition set forth in the Settlement

5    Agreement has not changed.

6        The Class continues to meet the requirements of numerosity, commonality, typicality,

7    and adequacy of representation. The Class is still comprised of at least hundreds of individuals

8    who, like the class representatives, were subjected to the same type of police conduct during the

9    George Floyd protests during the period May 29 to June 1, 2020, and were injured by police tear

10   gas while protesting peacefully.

11       **B.    The Consent Decree is Fair, Reasonable, and Should Be Granted**

12           **Preliminary Approval.**

13       Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on

14   court approval. *Frank v. Gaos*, ___ U.S. ___, 139 S.Ct. 1041, 1046 (2019). The Ninth Circuit

15   recognizes the "overriding public interest in settling and quieting litigation ... particularly ... in

16   class action suits ...." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see*

17   *also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9thCir. 1992) (There is a "strong

18   judicial policy that favors settlements, particularly where complex class action litigation is

19   concerned."); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same). A court

20   may probe the parties' consensual agreement only "to ensure that it is 'fair, adequate, and free

21   from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v.*

22   *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 2012)); *see also* Fed. R. Civ. P. 23(e)(2) (the court

23   may approve settlement "only after a hearing and on finding that it is fair, reasonable, and

24   adequate.").

25       At the preliminary approval stage, the Court need only find that the proposed settlement

26   is within the range of reasonableness such that it is appropriate to disseminate notice to the

27   class and schedule a fairness hearing. *See* William B. Rubenstein, Newberg on Class Actions, §

28   13.15 (5th ed. 2016) ("Newberg"); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015

WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015). "At this point, the court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with 'proper deference to the private consensual decision of the parties' to reach an agreement rather than to continue litigating." *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, at *8 (N.D. Cal. Dec. 17, 2015).

To determine whether an agreement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Tadepalli*, 2015 WL 9196054 at *11. Nevertheless, where a settlement is the product of arms-length negotiations conducted by experienced class counsel, the Court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 5 Newberg § 13.45; *In re: Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6091259, at *10 (N.D. Cal. Oct. 18, 2016); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013); *Tadepalli*, 2015 WL 9196054 *9.

Courts have further found an absence of collusion when settlement negotiations are conducted by a third-party mediator. *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016). Thus, at this stage, so long as the settlement falls into the range of possible approval—giving deference to the result of the parties' arms-length negotiations and the judgment of experienced counsel following sufficient investigation—the presumption applies and the settlement should be preliminarily approved.

## C.    The Proposed Notice Satisfies Due Process and Should Be Approved

Notice provided under Rule 23(e) must "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

1  be heard." *Lane*, 696 F.3d at 826 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962

2  (9th Cir. 2009)).

3  　　　　The notice standard is satisfied here. First, the proposed notice informs members of the

4  class of the relevant aspects of the litigation and the settlement, including: (i) a brief statement

5  of this action, description of key terms of the settlement agreement, and its effect on class

6  member claims; (ii) the date and time of the hearing on final approval; (iii) the deadline and

7  process for submitting objections to the proposed settlement agreement; and (iv) the web page,

8  phone number, and mailing addresses that may be used to obtain a copy of the settlement

9  agreement. Siegel Declaration, Ex. B (Proposed Notice).

10  　　　　The parties have agreed to the following distribution plan, as set forth in the Settlement

11  Agreement, including that notice shall be posted: (a) on the website for the Siegel, Yee, Brunner

12  & Mehta law firm, (b) on the website for Plaintiff Anti Police-Terror Project, (c) on the website

13  for the National Lawyers Guild, and (d) via social media in a manner calculated to reach as

14  many Settlement Class Members as is reasonably possible. Notice shall be posted/distributed by

15  the parties within twenty-one (21) days of the date of the Court's Order granting preliminary

16  approval, and shall remain posted so long as the Settlement Agreement, or for five years,

17  whichever is sooner, absent further order of the Court.

18  　　　　The proposed notice and distribution plan will fairly apprise members of the Class of the

19  settlement and their options with respect thereto, and fully satisfy due process requirements for

20  a Rule 23(b)(2) class with no opt-out rights. The Court should approve the proposed notice and

21  direct that it be distributed as set forth herein.

22  　　　　**D.**　　**The Court Should Approve the Proposed Scheduling Order, Including**

23  　　　　　　　**Setting a Date for the Fairness Hearing**

24  　　　　Once a court grants preliminary approval and notice is provided, the court conducts a

25  "fairness hearing," at which all interested parties have an opportunity to be heard. At such a

26  hearing, the court conducts a substantive evaluation of the proposed settlement to determine

27  whether it is "fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv.*

28

1    *Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Spann v. J.C.*

2    *Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

3    ///

4        The Parties propose the following schedule:

| Event | Date |
|---|---|
| Defendants to provide notice to the appropriate officials as required by the Class Action Fairness Act (CAFA) 28 U.S.C. § 1715(b) | Within 10 days of the filing of Preliminary Approval |
| Posting notice by the Plaintiffs as set forth above | Within 21 days after entry of order granting preliminary approval |
| Deadline for filing of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs | September 30, 2022 |
| Deadline for objections by class members | November 11, 2022 |
| Deadline for filing of Motion for Final Approval and for filing of responses to any timely-filed class member objections | November 18, 2022 |
| Hearing on Motion for Final Approval and on Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs | December 2, 2022 |

## VII.    CONCLUSION

*APTP v. City of Oakland*, No. 3:20-cv-03866-JCS
Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement - 17

1    For the foregoing reasons, plaintiffs respectfully request that this Court: (1) grant

2  preliminary approval of the Settlement Agreement; (2) approve and direct the publication of the

3  class notice proposed by the parties; and (3) adopt the schedule proposed herein for class

4  member objections, filing of Motions for Attorneys' Fees and Costs and for Final Approval, and

5  for hearing the motions and addressing objections. Defendants have reviewed this motion and

6  do not oppose plaintiffs' requests contained herein but intend to file their own separate

7  statement in support of preliminary approval.

8

9    DATED: August 3, 2022

10                        SIEGEL, YEE, BRUNNER & MEHTA

11

12

13    By: ___*/s/ Dan Siegel*_____
             Dan Siegel

14    ANNE BUTTERFIELD WEILLS, SBN 139845

15    JANE BRUNNER, SBN 135422
      SONYA Z. MEHTA, SBN 294411

16    EMILYROSE JOHNS, SBN 294319
      ANDREW CHAN KIM, SBN 315331

17    SIEGEL, YEE, BRUNNER & MEHTA
      Email: abweills@gmail.com;

18    janebrunner@hotmail.com;

19    sonyamehta@siegelyee.com;
      emilyrose@siegelyee.com;

20    chankim@siegelyee.com

21    Attorneys for Plaintiffs

22    ANTI POLICE-TERROR PROJECT,
      COMMUNITY READY CORPS, *et al.*

23

24

25

26

27

28