UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHWIN RUPAN,<br><br>           Plaintiff,<br><br>    v.<br><br>CITY OF OAKLAND, et al.,<br><br>           Defendants. | Case No. 20-cv-03866-JCS<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 205 |

## I.  INTRODUCTION

This case was initiated in June 2020 by seven plaintiffs who sought a temporary restraining order, injunctive relief and damages on behalf of a class of demonstrators who attended protests in Oakland beginning on May 29, 2020. The complaint named as defendants the City of Oakland, former Interim Chief of Police Susan E. Manheimer, OPD sergeant Patrick Gonzales, OPD officer Maxwell D'Orso, and OPD officer Casey Fought. On July 29, 2020, the Court entered a preliminary injunction. Dkt. no. 52. On October 20, 2020, Plaintiffs filed their First Amended Complaint ("FAC") and numerous individuals – including Ashwin Rupan – were added as plaintiffs. Ultimately, the injunctive relief and damages claims of all plaintiffs, except those asserted by Rupan, were settled and dismissed. Dkt. no. 191, 204. A permanent injunction was entered, on behalf of a class certified pursuant to Rule 23(b)(2), and the preliminary injunction was vacated. The Court entered a partial judgment as to all of Plaintiffs' claims except Rupan's. Dkt. no. 192.

Presently before the Court is Defendants' Motion for Summary Judgment, or Partial Summary Judgment, on Claims of Ashwin Rupan ("Motion"). Rupan has not opposed the Motion, though the Court granted an extension of the deadline to file an opposition based on a

communication Rupan had with Defendants' counsel suggesting that Rupan might be seeking such an extension. *See* dkt. no. 209. The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for October 27, 2023 pursuant to Civ.L.R. 7-1(b). The Case Management Conference set for the same date is also vacated. For the reasons stated below, the Motion is GRANTED.[1]

## II.  BACKGROUND

Rupan's claims are those alleged in the FAC, which were alleged by all plaintiffs against all defendants, except as noted: (1) "First Amendment Violation" pursuant to 42 U.S.C. § 1983; (2) "Fourth Amendment Excessive Force and Unlawful Seizure" pursuant to 42 U.S.C. § 1983; (3) "Fourteenth Amendment Substantive Due Process" pursuant to 42 U.S.C. § 1983; (4) "Monell and Supervisory Liability" pursuant to 42 U.S.C. § 1983 against the City and Chief Manheimer only; (5) "Assault and Battery"; (6) "Bane Act"; (7) "False Arrest and False Imprisonment"; and (8) "Negligence".

In the FAC, Rupan alleges the following specific facts in support of his claims:

> On the evening of May 29, 2020, plaintiff Ashwin James Rupan was near Webster Street between 30th Street and Hawthorn Street with a crowd of demonstrators. Police kettled the group and shot teargas and flashbang grenades into the crowd, which caused a stampede. The area was covered in smoke. He ran with the crowd, was pushed, and fell into a deep ditch of about ten feet. He was stuck in the ditch and could not walk. No-one could find him. He suffered a broken ankle.

FAC ¶ 104. In the government claim submitted pursuant to Cal. Gov. Code section 905 *et seq.* Rupan's allegations were similar except that he claimed that he "jumped over a hedge and fell approximately 10 feet to the ground and suffered a broken ankle." McLauglin Decl., Ex. C (Government Claim) at p. 6 (emphasis added).

At his deposition, Rupan testified that he was pushed into a bush by the "crowd pushing" but that he did not "feel like anybody specific[ally] grabbed [him] and pushed [him]." McLaughlin Decl., Ex. A (Rupan Depo.) at 161, 169. But he also testified that "somebody tried to, like, threw me over." *Id.* at 148. At another point, he testified that he didn't know how he fell,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

1  stating, "I rolled over. I don't know how that happened or who pushed me." *Id.* at 150. Rupan
2  testified that there was smoke and teargas, but that he was not at "the core of it" and was not
3  affected by it. *Id.* at 227.

4      Defendants have offered evidence in support of their Motion that on the night in question,
5  officers encircled and detained a group of individuals who they believed had been engaged in
6  looting, with one group of officers coming down Webster Street from Hawthorn and another
7  coming up Webster from 30th Street. *See generally,* Gerrans Decl; Tedesco Decl.  This incident
8  matches Rupan's deposition testimony with respect to his location and time when he was injured.
9  *See* McLaughlin Decl., Ex. A (Rupan Depo.) at 135-140.  Officer Tedesco states that as the
10 officers came up Webster, "numerous members of the group attempted to jump through a row of
11 bushes and a railing on the east side of Webster onto the roof of an adjacent building.  Tedesco
12 Decl. ¶ 5.  Similarly, Officer Gerrans reported that "some members of the group tried to jump over
13 a ledge or onto the rooftop of the building next to this potion of Webster Street.  Gerrans Decl. ¶ 4.
14 Gerrans states that "[o]fficers did not force the crowd up against the pushes and railing on the east
15 side of Webster – in fact officers . . . directed members of the crowd to move away from the
16 bushes and railing on that side of the street.  The crowd was not tightly packed against the bushes
17 or the railing." *Id.*  ¶ 5.  Officer Gerrans states further that there "were no clouds of tear gas and
18 [he] did not have any need to wear a gas mask." *Id.*  ¶ 6.

19     Officer Gerrans's body worn camera footage confirms these statements.  Gerrans Decl.,
20 Ex. A.  The footage captures the approach of the officers and the reaction of the individuals to the
21 officers they encountered, reflecting that the crowd was not large or tightly-packed, most of the
22 individuals lay on the ground in response to police commands, and that while a few people
23 attempted to flee by jumping through the bushes, the officers were not forcing the crowd in the
24 direction of the bushes. *Id.*  There is no indication that any of the detained individuals were
25 reacting to tear gas and no clouds of tear gas can be seen.

26 **III.  ANALYSIS**

27     **A.  Legal Standards Under Rule 56**

28     Summary judgment on a claim or defense is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id.* (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

**B.     Legal Standards Under 42 U.S.C. § 1983**

Section 1983 provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). Thus, analysis of a civil rights claim brought under § 1983 begins with the identification of the specific constitutional right allegedly infringed. *Id.* at 394.  The claim is then evaluated under the constitutional standards that apply to that constitutional right. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 7–22 (1985)).

To state a § 1983 claim against a city, a plaintiff must plead that (1) the city acted under

color of state law and (2) a constitutional deprivation was caused by an official policy or custom of the city. *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)).

### C. Claims Against Gonzales, D'Orso and Fought

Rupan has not alleged any specific conduct on the part of these defendants that relates to him. Nor has he pointed to any evidence in the record suggesting that any of these defendants had any interactions with Rupan or engaged in any conduct that would support Rupan's claims against them. Accordingly, the Court finds that all of Rupan's claims against these defendants fail as a matter of law.

### D. Claims Against Manheimer

Rupan alleges that Manheimer failed to train, supervise, or discipline other officers, but he provides no evidence that Manheimer did anything causally connected to any violation of his rights. Further, Rupan does not contend that Manheimer herself violated his rights under the First, Fourth, or Fourteenth Amendments, or that Manheimer was involved in any assault and battery, false arrest or imprisonment, or negligence that had any connection to his injuries; nor has pointed to any evidence of conduct by Manheimer that might establish such a violation. Therefore, Rupan has not established that a material issue of fact exists as to his claims against Manheimer, which are dismissed.

### E. Claims Against the City of Oakland

Rupan does not identify any City employee who violated his rights, falsely arrested or imprisoned him, assaulted or battered him, or negligently injured him. Absent any such evidence, Rupan has no viable claim against the City, whether a *Monell* claim or state law claim. His claims all fail for this reason. His claims fail for numerous other reasons as well, including a basic lack of evidence that he was falsely arrested or imprisoned, that he was assaulted or battered, or that any person's negligence harmed him. Further, with respect to the *Monell* claim, there is no evidence of an unconstitutional policy or practice, or that such a policy or practice was the moving force in a constitutional violation as to Rupan. Therefore, Rupan's claims against the City are dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion and dismisses Rupan's claims in this case with prejudice. The Clerk is instructed to close the case and enter judgment in favor of Defendants as to the claims of Ashwin Rupan.

**IT IS SO ORDERED.**

Dated: October 24, 2023

JOSEPH C. SPERO
United States Magistrate Judge